[Crim. No. 16702. Second Dist., Div. Two. Oct. 22, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. PAUL ROBERT COHEN, Defendant and Appellant.

## COUNSEL

Melville B. Nimmer and Lawrence R. Sperber for Defendant and Appellant.

Roger Arnebergh, City Attorney, and Michael T. Sauer, Deputy City Attorney, for Plaintiff and Respondent.

## OPINION

**ALARCON, J. pro tem.**\*—Paul Robert Cohen was charged in a complaint filed in the municipal court with a violation of section 415 of the Penal Code. The complaint alleges that the defendant "did wilfully and unlawfully and maliciously disturb the peace and quiet of the neighborhood of 110 North Grand and the peace and quiet of this complainant and other persons then and there being present, by then and there engaging in tumultuous and offensive conduct." Trial by jury was waived. The defendant was found guilty, probation was denied and he was sentenced to 30 days in the county jail.

### FACTS

On April 26, 1968, the defendant was observed in the Los Angeles County Courthouse in the corridor outside of division 20 of the municipal court wearing a jacket bearing the words "Fuck the Draft" which were plainly visible. There were women and children present in the corridor. The defendant was arrested. The defendant testified that he wore the jacket knowing that the words were on the jacket as a means of

---

\*Assigned by the Chairman of the Judicial Council.

informing the public of the depth of his feelings against the Vietnam War and the draft.

The defendant did not engage in, nor threaten to engage in, nor did anyone as the result of his conduct in fact commit or threaten to commit any act of violence. The defendant did not make any loud or unusual noise, nor was there any evidence that he uttered any sound prior to his arrest.

## QUESTION PRESENTED

Is offensive conduct which is not also tumultuous punishable under Penal Code section 415?[1]

Penal Code section 415 makes punishable a disturbance of the peace or quiet of a neighborhood by tumultuous *or* offensive conduct. If this statute is interpreted literally, any conduct which is tumultuous but not "offensive" is a crime and any conduct which is offensive but not "tumultuous" is a crime.

The appellant argues that he cannot be guilty of the crime of breach of the peace since his conduct consisted of the use of words unaccompanied by violence or the threat of violence.

It is the appellant's contention that the offense of disturbance of the peace does not exist without actual or threatened violence or behavior which is *likely* to create a disturbance. We agree with this statement of the law. However, we reach a different conclusion in applying the law to the facts.

Breach of the peace and disturbing the peace are synonymous terms. Section 415 when enacted in 1872 was a codification of the existing common law crime of breach of the peace. Therefore, in resolving the novel question presented us we can look to the common law to assist us in assaying the legislative intent behind the use of the words "offensive conduct."

In *Cantwell* v. *Connecticut,* 310 U.S. 296 at page 308 [84 L.Ed. 1213, 1220, 60 S.Ct. 900, 128 A.L.R. 1352], the United States Supreme Court stated the common law succinctly: "The offense known as breach of the peace embraces a great variety of conduct destroying or *menacing* public

---

[1]Penal Code section 415 provides as follows: "Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood or person, by loud or unusual noise, or by tumultuous or offensive conduct, or threatening, traducing, quarreling, challenging to fight, or fighting, or who, on the public streets of any unincorporated town, or upon the public highways in such unincorporated town, run any horse-race, either for a wager or for amusement, or fire any gun or pistol in such unincorporated town, or use any vulgar, profane, or indecent language within the presence or hearing of women or children, in a loud and boisterous manner, is guilty of a misdemeanor, and upon conviction by any court of competent jurisdiction shall be punished by fine not exceeding two hundred dollars, or by imprisonment in the county jail for not more than ninety days, or by both fine and imprisonment, or either, at the discretion of the court."

order and tranquility. It includes not only violent acts but acts and words *likely* to produce violence in others." (Italics added.)

The Restatement Second, Torts, section 116 contains this definition of the crime of breach of the peace: "A breach of the peace is a public offense done by violence, or likely to cause an immediate disturbance of public order."

In California our appellate courts have evolved the same definition for the crime of disturbing the peace.

■ Any act or conduct which disturbs the peace and quiet by inciting violence or which tends to provoke others to break the peace constitutes disturbance of the peace (*People* v. *Anderson,* 117 Cal. App. Supp. 763, 767 [1 P.2d 64]; 9 Cal.Jur.2d §§ 17-18). "It is not necessary that any act have in itself any element of violence in order to constitute a breach of the peace." (*People* v. *Green,* 234 Cal.App.2d Supp. 871, 873 [44 Cal.Rptr. 438].)

■ We conclude from the foregoing authorities that if it can be reasonably anticipated that certain conduct will cause others to disturb the peace, wilfully and maliciously engaging in such behaviour constitutes a disturbance of the peace.

Thus, under section 415 a person who engages in offensive behavior which has a tendency to provoke *others* to acts of violence or to in turn disturb the peace and quiet is guilty of disturbing the peace although his own conduct, while offensive, was not in itself violent.

■ In the matter before us the defendant deliberately wore a jacket emblazoned with language which is clearly offensive and below the "minimum standard of propriety and the accepted norm of public behavior" (*Goldberg* v. *Regents of the University of California,* 248 Cal. App.2d 867, 880 [57 Cal.Rptr. 463]) at least when paraded through a courthouse corridor containing women and children. The defendant's conduct consisted of more than a quiet and peaceful assertion of his convictions about the draft. He carefully chose the forum for his views where his conduct would have an effective shock impact. The defendant's stated purpose was to force a confrontation with others as to his opinion of the draft. The expression he chose to display on his jacket is one which is not used publicly to espouse a philosophy or a personal conviction. He was intent upon attracting the attention of others to his views by the sheer vulgarity of his expression. He must have been aware that his behavior would vex and annoy a substantial portion of his unwilling "audience." His conduct was, therefore, malicious under Penal Code section 7.[2]

It was certainly reasonably foreseeable that such conduct might cause

---

[2]Penal Code section 7 provides in part as follows: ". . . The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law; . . ."

others to rise up to commit a violent act against the person of the defendant or attempt to forceably remove his jacket. The fact that the police intervened and that the defendant was arrested before violence occurred does not make his conduct any the less provocative. We think it also a reasonable inference from the time and place of defendant's act that he intended to provoke disorder.

It is our conclusion that the defendant's acts constituted the type of offensive conduct prohibited by section 415 in that it had a tendency to incite others to violent behavior or to disturb the peace.

 It is also our view that it is not a valid defense to a charge of disturbing the peace that the defendant's conduct was not violent or tumultous if it was foreseeable that his acts would tend to cause others to commit violent acts or disturb the peace.

 The court minutes reflect that the defendant was found guilty as charged. The complaint charged him with engaging in tumultuous *and* offensive conduct. There was no evidence that the defendant engaged in "tumultuous" conduct. Penal Code section 415 sets forth a series of acts in the disjunctive. When an accusatory pleading sets forth more than one act prohibited by section 415 in the conjunctive, evidence which is sufficient to support a finding of guilt of any one of the acts denounced by the statute is sufficient for a conviction although the evidence does not support a conviction for each of the acts set out in the complaint (*People* v. *McClennegen,* 195 Cal. 445, 452 [234 P. 91]).

The appellant also contends that the term " 'offensive' is unconstitutionally vague and overbroad." We disagree. In *People* v. *Green,* 234 Cal.App.2d Supp. 871, 875 [44 Cal.Rptr. 438] cert. denied, 382 U.S. 993 [15 L.Ed.2d 480, 86 S.Ct. 576], Penal Code section 415 was held to be "not unconstitutionally vague or indefinite." We feel the language relied upon by the California Supreme Court in *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1130 [80 Cal.Rptr. 897, 459 P.2d 225] is particularly applicable as a standard in construing the constitutional scope of the term "offensive" as used in section 415. "In reaching this conclusion we invoked the settled rule of statutory interpretation that 'All laws should receive a sensible construction. General terms should be so limited in their application as to not lead to injustice, oppression, or an absurd consequence. *It will always, therefore, be presumed that the Legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over the letter.*' " (*United States* v. *Kirby* (1869) 74 U.S. (7 Wall.) 482, 486-487 [19 L.Ed. 278, 280]; accord, *People* v. *Oliver* (1961) 55 Cal.2d 761, 767 [12 Cal. Rptr. 865, 361 P.2d 593], and cases cited.) (Italics added.)

The words "offensive conduct" have stood the test of time and have a commonly accepted meaning. The term "offensive" has a well established meaning when used in connection with words which can cause a breach of the peace. In *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 571-572 [86 L.Ed. 1031, 1034-1035, 62 S.Ct. 766], the United States Supreme Court quoted with approval the following language from the opinion of the Supreme Court of New Hampshire in *State* v. *Chaplinsky,* 91 N. H. 310 [18 A.2d 754]: "The word 'offensive' is not to be defined in terms of what a particular addressee thinks. . . . The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight. . . . The English language has a number of words and expressions which by general consent are 'fighting words' when said without a disarming smile. . . . Such words, as ordinary men know, are likely to cause a fight. So are threatening, profane or obscene revilings. Derisive and annoying words can be taken as coming within the purview of the statute as heretofore interpreted only when they have this characteristic of plainly tending to excite the addressee to a breach of the peace. . . . The statute, as construed, does no more than prohibit the face-to-face words plainly likely to cause a breach of the peace by the addressee, words whose speaking constitute a breach of the peace by the speaker—including 'classical fighting words,' words in current use less 'classical' but equally likely to cause violence, and other disorderly words, including profanity, obscenity and threats."

As modified by case law the only "offensive" conduct prohibited by section 415 is that which incites violence or has a tendency to incite others to violence or a breach of the peace. (Cf. *People* v. *Davis,* 68 Cal.2d 481, 486-487 [67 Cal.Rptr. 547, 439 P.2d 651].) This standard makes clear for triers of fact the nature of the forbidden conduct, and eliminates prosecutions or convictions for conduct which is merely offensive.

The appellant argues that Penal Code section 415 if intrepreted to prohibit the behavior which led to his arrest and conviction violates his right to freedom of speech as guaranteed by the First Amendment.

In analyzing this constitutional attack we can look to the guidelines set forth in opinions of the United States Supreme Court involving the conflict created by the co-existence of the right of freedom of speech and the crime of disturbance of the peace where the alleged disturbance involves the use of language.

■ Freedom of speech is not absolute. It must be balanced against other public interests (*American Communications Assn.* v. *Douds,* 339 U.S. 382, 399 [94 L.Ed. 925, 944, 70 S.Ct. 674]; *Breard* v. *Alexandria,* 341 U.S. 622, 642 [95 L.Ed. 1233, 1248, 71 S.Ct. 920, 35 A.L.R.3d 335]). ". . . when 'speech' and 'non-speech' elements are combined in the same course of conduct, a sufficiently important governmental interest in

regulating the non-speech element can justify incidental limitations on First Amendment freedoms." (*United States* v. *O'Brien,* 391 U.S. 367, 376 [20 L.Ed.2d 672, 680, 88 S.Ct. 1673].)

■ The First Amendment does not afford any protection to one who uses language which tends to incite violence or a disturbance of the peace by others. "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite to an immediate breach of the peace. It has been well observed that such utterances are no essential part of any such exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. ■ 'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.' *Cantwell* v. *Connecticut,* 310 U.S. 296, 309-310 [84 L.Ed. 1213, 1220-1221, 60 S.Ct. 900, 128 A.L.R. 1352]." (*Beauharnais* v. *Illinois,* 343 U.S. 250, 255 [96 L.Ed. 919, 926, 72 S.Ct. 725]; *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 571-572 [86 L.Ed. 1031, 1034-1035, 62 S.Ct. 766].)

■ The right to freedom of speech does not protect illegal conduct merely because it is in part initiated, evidenced, or carried out by means of language either spoken, written, or printed. (*Giboney* v. *Empire Storage & Ice Co.,* 336 U.S. 490, 502 [93 L.Ed. 834, 843, 69 S.Ct. 684]; *Cox* v. *Louisiana,* 379 U.S. 559, 563 [13 L.Ed.2d 487, 491-492, 85 S.Ct. 476]; *People* v. *Davis,* 68 Cal.2d 481, 486 [67 Cal.Rptr. 547, 439 P.2d 651].)

■ "When protest takes the form of mass demonstration, parades, or picketing on public streets and sidewalks, the free passage of traffic and *the prevention of public disorder and violence* become important objects of legitimate state concern. As the court stated, in *Cox* v. *Louisiana,* 'We emphatically reject the notion . . . that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct such as patroling, marching, and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech.' 379 U.S. 536, 555 [13 L.Ed.2d 471, 484, 85 S.Ct. 453]." (Italics added.) (*Walker* v. *Birmingham,* 388 U.S. 307, 316 [18 L.Ed.2d 1210, 1217, 87 S.Ct. 1824].)

"One may . . . be guilty of the offense [of breach of the peace] if he commits acts or makes statements likely to provoke violence or disturbance of good order, even though no such eventuality be intended." (*Cantwell* v.

*Connecticut,* 310 U.S. 296, 309 [84 L.Ed. 1213, 1221, 60 S.Ct. 900, 128 A.L.R. 1352].)

 In the case before us, the defendant's conduct consisted of "speech" and "non-speech" elements. Here the non-speech element of defendant's conduct consisted of marching through a public building with the premeditated intent of attracting the attention of others to the message on his jacket.

The gravaman of the defendant's offense was his selection of the public corridors of the county courthouse as the place to parade before women and children who were involuntarily subjected to unprintable language. The expression used by the defendant to propagate his views is one of the most notorious four-letter words in the English language. Despite its ancient origins, it has yet to gain sufficient acceptance to appear in any standard dictionary (cf. Webster's Third New International Dictionary; The Oxford Dictionary of American English; The Oxford English Dictionary). In the work "A Dictionary of Slang and Unconventional English" by Eric Partridge, the word is defined; however, the second letter has been replaced with an asterisk.

The defendant has not been subjected to prosecution for expressing his political views. His right to speak out against the draft and war is protected by the First Amendment. However, no one has the right to express his views by means of printing lewd and vulgar language which is likely to cause others to breach the peace to protect women and children from such exposure.

It is our view, based on our interpretation of the decisions of the United States Supreme Court that the defendant's conduct in this case went beyond the permissive ambit of the First Amendment's protection as circumscribed in the *Cantwell, supra, Chaplinsky, supra,* and *Beauharnais, supra,* cases.

 The trial judge ruled that although the complaint charged the defendant with disturbing the peace by means of tumultuous and offensive conduct, the defendant could be found guilty of the use of "vulgar, profane, or indecent language within the presence of or hearing of women or children in a loud boisterous manner" conduct also prohibited by section 415 of the Penal Code. This ruling was incorrect. Proof that the language was uttered in a "loud and boisterous" manner is "a very necessary matter to complete the offense" of disturbing the peace by the use of vulgar, profane and indecent language in the presence or hearing of women and children (*Ex parte Boynton,* 1 Cal.App. 294 [82 P. 90]). In the present case there was no proof that the defendant engaged in any loud or boisterous conduct. Furthermore, a person cannot be found guilty of a crime of which he was not charged. "Conviction upon a charge not made would be sheer denial of due process." (*De Jonge* v. *Oregon,* 299 U.S. 353, 362 [81 L.Ed. 278, 282, 57 S.Ct. 255].)

We have found that the evidence was sufficient to support a conviction for disturbing the peace by means of offensive conduct as prohibited by section 415 of the Penal Code. A decision which is right in result will not be reversed on appeal although the reason stated is wrong. (*People* v. *Evans,* 249 Cal.App.2d 254, 257 [57 Cal.Rptr. 276]; *People* v. *Selz,* 138 Cal.App.2d 205, 210 [291 P.2d 186].)

In a court trial, the trial judge's erroneous opinion on the law is not grounds for a reversal. (*People* v. *Wolfe,* 257 Cal.App.2d 420, 426 [64 Cal.Rptr. 855].) We have examined each of the points raised by the defendant without finding reversible error. The judgment is affirmed.

Roth, P. J., and Fleming J., concurred.

A petition for a rehearing was denied November 13, 1969, and appellant's petition for a hearing by the Supreme Court was denied December 17 1969. Traynor, C. J. Peters, J. and Tobriner, J., were of the opinion that the petition should be granted.