[Crim. No. 16743. Second Dist., Div. One. Feb. 26, 1970.]

In re ALVIN HORATIO PRICE, a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ALVIN HORATIO PRICE, Defendant and Appellant.

942

## Counsel

Elsa Kievits for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**WOOD, P. J.**—In a petition filed in the superior court, sitting as a juvenile court, it was alleged, in paragraph I, that Price (referred to herein as the minor), who was 17 years of age on October 22, 1968, comes within the provisions of section 602 of the Welfare and Institutions Code, in that: on September 25, 1968, he did wilfully and unlawfully speak obscene words in a public place, thereby violating section 311.6 of the Penal Code. It was alleged further therein, in paragraph II, that on said September 25 the minor also violated section 415 of the Penal Code (disturbing the peace).

A referee of the juvenile court found that the allegations of paragraph I of the petition (re obscenity) were true; and that the minor comes within the provisions of said section 602 of the Juvenile Court Law. (It was also found that the allegations of paragraph II were not true.) The referee ordered the minor placed on probation and released to the custody of his mother, and that he remain on probation for six months. He appeals from the judgment (order).

On September 27, 1968, about 7:30 a.m., Officers Helms and Lawson received a radio call that a burglary suspect was at the John Muir High School at 5029 South Vermont Avenue in Los Angeles. About 10 minutes later they arrived at the school where they were met by school officials. The officers began an investigation, checked the school property, and

arrested a juvenile who had been found by school authorities in the gymnasium where he had been during the night. The officers placed him (alleged burglar) in the rear of the police car which was parked on the school property about 20 to 30 feet from a gate on the 60th Street side of the property. While the officers were talking with school officials, on the subject of protecting some of the burglary evidence until other officers arrived, appellant Price came to the police car from the sidewalk on 60th Street. As he was approaching the car and passing Officer Lawson, he asked the officer for a cigarette. The officer replied that he did not have one and that Price looked quite young to be smoking a cigarette. Then Price started speaking with the arrested person (Hearndon) who was in the car. The officers asked Price to leave because he was interfering with their work. He said something to the effect that he did not have to leave. The officers again asked him to leave, and he walked about 20 feet from the police car. Then Price, in the presence of numerous students, boys and girls of the approximate ages of 12 and 13 years, and in the presence of one or two teachers and a security guard, said to the officers in a loud voice: "You fucking pigs can't tell me to leave," and "I know the fucking law backwards." He called the officers "mother fuckers," and as he was walking toward the gate he was getting louder and, in this louder voice, was continuously using those same words, directed to the officers, and saying that he knew the law. When he arrived at the sidewalk on 60th Street, some persons who apparently had been with him before he went upon the school property said, "Come on Al, let's go." He said, "Fuck them. They can't push me around."

At that time, according to the estimate of one officer, 15 to 25 students, boys and girls, were in the immediate area; and, according to the other officer, 5 or 6 students, boys and girls, were walking on the school property.

Appellant Price did not testify. A witness called on his behalf was Bennie Hearndon who testified in substance that he (witness) was arrested on September 27, 1968, at the school; that while he was in the back of the police car, Price (appellant), whom he had known about two months, came to the car and spoke to him; at that time he (witness) did not hear Price use any obscene language, nor hear him use any words like those hereinabove mentioned.

Upon the record on appeal it is unquestioned that appellant, under the circumstances hereinabove related, said the words above referred to as having been said by him.

Appellant contends that the words used by him were not obscene. He argues to the effect that the words were a reaction to a situation which was distasteful to him and were merely expressions of disgust and anger.

Section 311.6 of the Penal Code provides: "Every person who knowingly sings or speaks any obscene song, ballad, or other words, in any public place is guilty of a misdemeanor."

Section 311 of the Penal Code provides: "As used in this chapter [chapter 7.5]: (a) 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance."

Subdivision (b) of said section 311 provides: " 'Matter' means any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statue or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials."

It thus appears that the word "matter" appearing in subdivision (a) of section 311 is defined in subdivision (b) of that section as meaning various articles such as a book, picture, mechanical reproduction, etc. It is true, as indicated by appellant, that the definition, there given, does not state that the spoken word is matter. Of course, a spoken word is not to be classified as an article or tangible object.

An amendment of section 311 of the Penal Code in 1969 inserted the word "matter" after the word "Obscene," thereby defining "Obscene matter" instead of defining (as before the amendment) the word "Obscene." This recent amendment indicates an intention of the Legislature in its former version of section 311 to define the words "Obscene matter" instead of defining the word "Obscene."

As hereinabove indicated there was no code definition of the word "obscene," as used in said section 311.6, with reference to a spoken word. In any event, a proper interpretation of the word "obscene," as used in section 311.6, may be found in the definition of "obscenity" as given in *Roth* v. *United States* (1957) 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304]. In that case it was said that the applicable standard for determining "obscenity" was "[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." It was also said therein (p. 487 [1 L.Ed.2d at p. 1508]) that obscene material was "material which deals with sex in a manner appealing to prurient interest."

Section 311.6 of the Penal Code provides in part (the part applicable

here): "Every person who knowingly . . . speaks any obscene . . . words, in any public place is guilty of a misdemeanor."

In the present case, Price (appellant) was in a public place. He had gone upon the public school grounds, from the sidewalk outside the grounds, and, before he used the words involved here, he was interfering with the work of public officers who had arrested and were holding in custody a burglary suspect. After the officers asked him to leave (go away from the police car where he was talking with the suspect), he began calling the officers the names above-mentioned, and he continued saying the words in a loud voice several times in the presence of numerous school boys and girls, of the approximate ages of 12 and 13 years, and in the presence of one or two teachers and a security guard. In every epithet, directed to the officers by appellant, some form of the sex word involved here was used. The word was used in various forms or parts of speech—as an adjective, verb, and noun. The tenor of each and all of the epithets was completely sexual. His continuous use of the sex word, involved here, in combination with the word "mother" was intended to be, and it was, a vulgar description of sexual intercourse with one's mother. In so repeating and emphasizing, in a loud voice, this combination of words, and his repeatedly using and emphasizing the sex word in every statement made by him, he intended that the dominant theme of his words should be, and it was, an appeal to prurient interest. His purported description of the officers was wholly in sexually derogatory terms and its predominant and only appeal was to prurient interest. Of course, the whole and every part of his expressions were "utterly without redeeming social importance."

Appellant asserts further that since there was no evidence as to the community standard regarding the use of the words involved herein, there was no proof of obscenity. He cites *In re Giannini,* 69 Cal.2d 563 [72 Cal. Rptr. 655, 446 P.2d 535]. That case is distinguishable factually from the present case. In *Giannini* the question as to obscenity pertained to a dance that was performed before an audience at a nightclub, and proof was required therein regarding the community standard as to whether the dancer's conduct appealed to prurient interest. In the present case, only words were involved, and those words were not in any context, but were words that were various forms of a sex word. In *Goldberg* v. *Regents of the University of California,* 248 Cal.App.2d 867 [57 Cal.Rptr. 463], it was held that the loud, repeated public use of the word involved therein (which in general effect was the sex word involved here) clearly infringed on the minimum standard of propriety and the accepted norm of public behavior of both the academic community and the broader social community. In that case there had been a student demonstration or protest regarding an arrest of a person. The court therein stated further (p. 880)

that "Plaintiffs' contention that the words were used only in the context of their demonstration is not borne out by the record which indicates that the terms were used repeatedly, and often out of context, or when used in context given undue emphasis." In view of the ruling therein that such use of the word in question infringed on the minimum standard of propriety of public behavior, it would seem there was no need of expert testimony in the present case regarding such community standard as to the use of the same word. In the present case, there was no context and nothing to decide regarding the meaning of the physical acts of appellant, as distinguished from his acts in speaking the words. Appellant's contention regarding expert testimony as to the community standard is not sustainable.

Under the circumstances of this case, the sex words spoken by appellant were obscene within the meaning of section 311.6 of the Penal Code.

In *Roth* v. *United States, supra,* it was said (p. 485 [1 L.Ed.2d at p. 1507]) that "obscenity is not within the area of constitutionally protected speech or press."

The findings of the referee are supported by the evidence.

The judgment (order) is affirmed.

Lillie, J., concurred.

**THOMPSON, J.**—I dissent. While appellant's conduct could have been held to be a breach of the peace (*People* v. *Cohen,* 1 Cal.App.3d 94 [81 Cal.Rptr. 503]), it does not constitute a violation of Penal Code section 311.6, the statute which the juvenile court referee found to have been violated by appellant.

Penal Code section 311.6 states, "Every person who knowingly sings or speaks any obscene song, ballard, or other words, in any public place is guilty of a misdemeanor." At the time of the offense here charged, Penal Code section 311 defined "obscene." It stated, "As used in this chapter: (a) 'Obscene' means that to the average person, applying contemporary community standards, the predominate appeal of the matter, taken as a whole, is to prurient interest, *i.e.,* a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance."

While the words used by appellant were in their context profane and intentionally offensive, I find in them no appeal to prurient interest. They would not, to the average person, appeal to a shameful or morbid interest

in sex, nudity, or excretion. (*The Meaning of Obscene and the Problem of Scienter,* 36 So.Cal. L. Rev. 513; Krueger, *What's All This - - - About Pornography* (August 1965) L. A. Bar Bull., p. 505; Stegner, *Goodby to All T - - - - - - T,* The Atlantic, March 1965, cited in Krueger, *supra.*) The term "f - - - - - g pigs" in the context in which it was used referred not to copulation of porcine animals but was rather a highly insulting epithet directed to the police officers. The term "f - - - - - g law" referred not to the law of sexual intercourse but a derogatory reference to the law in general. The average person would not have construed the phrase "f - - k them" uttered by appellant in reference to the police officers as an invitation to engage in sexual activities with them. Appellant's use of the vulgarism describing the filial partner in an oedipal relationship is fairly to be viewed as an epithet rather than as a phrase appealing to a shameful or morbid interest in intra-family sex.

I thus conclude that the words uttered by appellant do not meet the California statutory definition of that which is obscene. The reliance of the majority opinion upon *Goldberg* v. *Regents of the University of California,* 248 Cal.App.2d 867 [57 Cal.Rptr. 463] as standing for a contrary position is misplaced. *Goldberg* deals not with a prosecution for obscene conduct or speech but with the definition of speech or conduct which properly justifies academic discipline, there a suspension from the university. *Goldberg* and *People* v. *Cohen,* 1 Cal.App.3d 94 [81 Cal.Rptr. 503] are authority for what might properly have occurred in the trial court—appellant might have been held to have been in violation of Penal Code section 415 by reason of his use of offensive language under the circumstances in which it was used. *Goldberg* is not authority for the proposition that the California statutory definition of obscenity and the United States Supreme Court cases on which it is based should be ignored.

There is a second reason impelling reversal of the juvenile court's determination. Our Supreme Court has held that absent expert testimony that matter offends "contemporary community standards," it cannot be held obscene.[1] (*In re Giannini,* 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535].) No expert testimony or other evidence bearing upon the obscene character of the words spoken was introduced at the hearing before the juvenile court referee. The requirement of *Giannini* is fatal to the order from which an appeal has been taken.

I cannot accept the attempt of the majority to distinguish *In re Giannini, supra.* The majority opinion states that the rule of *Giannini,* developed in a prosecution of performers of an allegedly obscene dance, is inapplicable to

---

[1]The rule of *Giannini* has been repealed by the addition of section 312.1 to the Penal Code in 1969. The statutory repeal occurred after the trial of the case at bench.

pure speech if that speech is a "sex word" not uttered "in any context" which appeals to prurient interest in the judgment of the court. The approach of the majority is deficient in two respects. It ignores the proposition that the requirement of expert testimony imposed by *Giannini* is directed primarily toward the proof of community standards by which speech or conduct is to be judged and not toward proof of that which appeals to prurient interest in the abstract. (*In re Giannini, supra,* 69 Cal.2d 563, 574.) It also pays no respect to the reason for the rule articulated by the Supreme Court. In imposing the requirement of expert testimony, the Court said: " 'There is no external measuring rod for obscenity. Neither, on the other hand, is its ascertainment a merely subjective reflection of the taste or moral outlook of individual jurors or individual judges . . . . Their interpretation ought not to depend solely on the necessarily limited, hit-or-miss, subjective view of what they [*sic*] are believed to be by the individual juror or judge. It bears repetition that the determination of obscenity is for the juror or judge not on the basis of his personal upbringing or restricted reflection or particular experience of life, but on the basis of "contemporary community standards." ' " (*In re Giannini,* 69 Cal.2d 563, 575.)

The impediment to the prosecution of commercial peddlers of smut inherent in the rule of *Giannini* is regrettable. The need for the rule is, however, perhaps well illustrated by the majority opinion in the case at bench. There is, after all, a strong possibility that an expert witness called in the matter before us might have testified to the occasional use of the offending profane adjective in bar association quarters or in trial judges' lounges—alas, all too often in reference to a decision of the Court of Appeal.

I would reverse the judgment.

A petition for a rehearing was denied March 25, 1970, and appellant's petition for a hearing by the Supreme Court was denied April 22, 1970.