[No. B053330. Second Dist., Div. Five. June 28, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
ARMANDO HERNANDEZ, Defendant and Appellant.

1378

## COUNSEL

Kenneth M. Stern, under appointment by the Court of Appeal, for Defendant and Appellant.

James K. Hahn, City Attorney, William N. Sterling and Janet G. Bogigian, Deputy City Attorneys, for Plaintiff and Respondent.

## OPINION

**BOREN, J.**—Following a jury trial in municipal court, appellant was convicted of making telephone calls with the intent to annoy, in violation of Penal Code section 653m, subdivisions (a) and (b).[1] Appellant contends both statutes are unconstitutionally overbroad because they impinge on his free speech rights, and that subdivision (a) is unconstitutionally vague as well. We transferred the case to this court because there is, at present, no reported Court of Appeal opinion addressing the issues presented.[2] We hold that both subdivisions (a) and (b) are constitutional, and accordingly affirm appellant's convictions.

---

[1]Section 653m, subdivision (a) (hereinafter subdivision (a)) provides: "Every person who with intent to annoy telephones another and addresses to or about such other person any obscene language or addresses to such other person any threat to inflict injury to the person or property of the person addressed or any member of his family, is guilty of a misdemeanor."

Section 653m, subdivision (b) (hereinafter subdivision (b)) provides: "Every person who makes a telephone call with intent to annoy another and without disclosing his true identity to the person answering the telephone is, whether or not conversation ensues from making the telephone call, guilty of a misdemeanor."

[2]*In re Elias* ▮(Cal.App.) held that subdivision (b) was unconstitutionally overbroad. The Supreme Court directed that *Elias* was not to be published in the Official Reports.

## FACTS

The evidence introduced at trial established that between July 26 and August 6, 1989, appellant made approximately 80 telephone calls to Phyllis Mischel. Appellant, whom Ms. Mischel knew by the name "Vivianna," was distraught over the breakup of a relationship with Bob W., a tenant in the apartment building which Ms. Mischel managed. Over a period of months, Ms. Mischel had talked to appellant 20 to 30 times and was familiar with appellant's voice.

Thus, when appellant called Ms. Mischel in the building's business office on July 26, 1989, she recognized his voice immediately, even though appellant did not identify himself. The calls from appellant continued for approximately a two-week period. On a typical day, Ms. Mischel would receive a number of calls several minutes apart. During one sequence, appellant (without identifying himself) called Ms. Mischel a "f– – –bitch," hung up the phone, called several more times and "played a tune" with the telephone buttons, then called again and said he "wouldn't give up" and "would keep calling until he got what he wanted."

What appellant wanted was to communicate directly with Bob W., something which he could not do because Bob W. had obtained a restraining order. Sometimes appellant referred to Ms. Mischel as a "messenger" (with the idea that she would relay his communications to Bob W.), but at other times appellant was hostile and accused Ms. Mischel of interfering with his and Bob W.'s relationship.[3] Ms. Mischel also received a number of "hangup" calls, several calls in which she would hear only "weird laughter," and other calls in which appellant would call Ms. Mischel obscene names.[4] Appellant also threatened Ms. Mischel, stating, "You're in deep trouble, bitch," and telling Ms. Mischel she would "pay" if he went to jail.

Not all appellant's calls were anonymous. On July 30, for example, appellant left several extended messages on Ms. Mischel's answering machine regarding his relationship with Bob W. These messages were annoying to Ms. Mischel, but were not obscene or threatening.

Ms. Mischel kept a log of all appellant's calls during the period in question. Appellant was traced through a "telephone trap" set up by Pacific Bell, which identified the telephone number from which the calls originated.

---

[3] In response to complaints from a number of tenants, Ms. Mischel called the police after appellant engaged in disruptive behavior on the premises. In one instance, for example, appellant banged loudly on Bob W.'s door and called to him in the middle of the night. Appellant was arrested several times as a result of Ms. Mischel's calls.

[4] In other calls, appellant called Ms. Mischel a "fat bitch," a "whore," and a "c– – –."

(Appellant aided the effort by leaving a return phone number on one of the answering machine messages.)

Appellant admitted making 15 to 20 calls to Ms. Mischel, some of which were necessitated by the fact that Ms. Mischel hung up on appellant so he had to call back. Appellant stated that he did not intend to annoy Ms. Mischel, but only wanted to communicate indirectly with Bob W. and "handle his aggravation without being put in jail."

## DISCUSSION

Appellant contends that both subdivisions (a) and (b) are overbroad because they prohibit, in addition to unlawful conduct, lawful free speech, as guaranteed by the First Amendment of the United States Constitution and article I, section 2 of the California Constitution.

"It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." (*Broadrick* v. *Oklahoma* (1973) 413 U.S. 601, 611-612 [37 L.Ed.2d 830, 839-840, 93 S.Ct. 2908].) The "protection of innocent individuals from fear, abuse or annoyance at the hands of persons who employ the telephone, not to communicate, but for other unjustifiable motives," is such a compelling interest. (*United States* v. *Lampley* (3d Cir. 1978) 573 F.2d 783, 787 [50 A.L.R.Fed. 525] (construing the federal counterpart to subd. (a)).) Where the statute in question is narrowly drawn to protect a legitimate state interest, and proscribes conduct and not purely speech, the overbreadth of the statute "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." (*Broadrick, supra,* 413 U.S. at p. 615 [37 L.Ed.2d at p. 842].)

As in *Broadrick,* which upheld a statute restricting the political activities of civil servants, subdivisions (a) and (b) forbid conduct rather than pure speech. They are not directed at particular groups or viewpoints, and are narrowly drawn to prohibit only limited kinds of telephone calls. Subdivision (a) prohibits only telephone calls in which the caller (1) telephones another person with the intent to annoy, *and* (2) uses obscene language to or about the other person, *or* threatens "to inflict injury to the person or property of the person addressed or any members of his family." Subdivision (b) prohibits an individual from making phone calls only when motivated by the intent to annoy, and only when the caller does not disclose his or her true identity. Thus, even anonymous calls are permitted provided the caller does

not intend to annoy the victim; even annoying calls are permitted, as long as the caller identifies himself.

In fact, it is difficult to imagine a situation in which an individual could engage in the specific conduct proscribed in subdivisions (a) and (b) and still enjoy constitutional protection. Appellant offers several hypothetical situations which, he argues, might involve telephone calls which are both annoying and threatening, yet nonetheless constitutionally protected. These include "any type of communications concerning potential litigation," the threat to have a trespasser's car towed away, or a threat to return items to a department store and demand reimbursement (which would be injurious to the store's property rights).

As a practical matter, the likelihood that any of these relatively benign uses of the telephone would result in a criminal prosecution is extremely remote. Assuming such a prosecution was filed, the statute could be attacked as applied to that constitutionally protected conduct. (*Broadrick* v. *Oklahoma, supra,* 413 U.S. at p. 609 [37 L.Ed.2d at p. 838].) This still does not make subdivisions (a) and (b) substantially overbroad. ■ In order to successfully challenge a statute as overbroad, a party "must demonstrate from the text of [the statute] and from actual fact that a substantial number of instances exist in which the [statute] cannot be applied constitutionally." (*New York State Club Assn.* v. *City of New York City* (1988) 487 U.S. 1, 14 [101 L.Ed.2d 1, 17, 108 S.Ct. 2225].) "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." (*City Council* v. *Taxpayers for Vincent* (1984) 466 U.S. 789, 800 [80 L.Ed.2d 772, 783, 104 S.Ct. 2118].) Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." (*Id.* at p. 801 [80 L.Ed.2d at p. 784].) ■ The contrived hypotheticals presented by appellant do not make such a showing.

■ Appellant also contends that the language "addresses to such other person any threat to inflict injury to the person or property of the person addressed . . ." in subdivision (a) is unconstitutionally vague, as it cannot be determined what conduct is proscribed. For instance, appellant suggests that the threats he made to Ms. Mischel that she would "pay" and was "in deep trouble" might merely mean that she "would have to pay, and thus be injured, by having to take the time to go to court to testify against appellant." Appellant's words might be innocuous when considered in a vacuum. However, in the context of subdivision (a), and under the circumstances in which

they were used, their meaning is "chillingly clear." (*People* v. *Phillips* (1985) 41 Cal.3d 29, 90 [711 P.2d 423] (conc. and dis. opn. of Feinerman, J.).)

In addition to his constitutional challenges to subdivisions (a) and (b), appellant contends his conviction for violating subdivision (a) must be reversed because the trial court incorrectly instructed the jury as to the meaning of the word "obscene,"[5] and the prosecution failed to introduce expert testimony on whether appellant's words were "obscene" by contemporary community standards.

Although appellant did not object to the instruction as to the meaning of the word "obscene" at trial, he has not waived his right to object on appeal. Under Penal Code section 1259, an appellate court may review a jury instruction despite the absence of an objection below if a substantial right of the defendant is affected. (*People* v. *Satchell* (1971) 6 Cal.3d 28, 33, fn. 10 [489 P.2d 1361 [50 A.L.R.3d 383]; *People* v. *Ireland* (1969) 70 Cal.2d 522, 539 [450 P.2d 580 [40 A.L.R.3d 1323].)

Appellant asserts that several substantial rights are affected by the trial court's instructions. First, he contends, the trial court is required to instruct, sua sponte, on all general principles of law, including what is necessary to prove all elements of the charge, under the constitutional right to a trial by jury. (*People* v. *Garcia* (1984) 36 Cal.3d 539, 551 [684 P.2d 826].) Second, the definition of "obscene" is subject to an ambiguous yet technical interpretation, again raising potential prejudicial error. Third, appellant cites *Osborne* v. *Ohio* (1990) 495 U.S. 103 [109 L.Ed.2d 98, 110 S.Ct. 1691], in which the United States Supreme Court overturned an obscenity conviction, on due process grounds, because the trial court had not instructed the jury as to the meaning and elements of "obscenity" within the meaning of the state statute. Appellant's contentions properly deserve appellate review as substantial rights of due process and freedom of speech may be affected. Further, an improper instruction of "obscenity" would not be harmless error for these same reasons.

We must first determine whether the trial court correctly instructed the jury by giving a common dictionary definition of the word "obscene" or whether it should have defined "obscene" as predominantly dealing with sex in a manner appealing to the prurient interest consistent with the United States Supreme Court's definitions in *Roth* v. *United States* (1957) 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304] and *Miller* v. *California* (1973) 413 U.S. 15 [37 L.Ed.2d 419, 93 S.Ct. 2607]. We conclude that the jury was

---

[5]The jury was instructed that "obscene" means "offensive to one's feelings, or to prevailing notions of modesty or decency; lewd."

correctly instructed with the common dictionary definition of "obscene" based upon the legislative intent behind section 653m, and the distinction between telephone harassment communications and other forms of speech subject to *Miller.*

■ Penal statutes must be interpreted in light of the objective sought to be achieved, as well as the evil sought to be averted. (*People* v. *Carroll* (1970) 1 Cal.3d 581, 584 [83 Cal.Rptr. 176, 463 P.2d 400]; *Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 156 [118 Cal.Rptr. 14, 529 P.2d 46].) ■ The purpose of section 653m is to deter people from making harassing telephone calls with the intent to annoy and thus, to secure an individual's right to privacy against unwanted intrusion. (*Schlussel* v. *Schlussel* (1983) 141 Cal.App.3d 194 [190 Cal.Rptr. 95 [37 A.L.R.4th 846].)

Section 653m does not provide a specific definition for "obscene" nor is there any legislative history behind this statute which provides guidance. In the absence of an established definition of "obscene" within the meaning of section 653m, a court may properly define a term consistent with the legislative purpose. Here, the trial court instructed the jury as follows: " 'obscene' means offensive to one's feelings, or to prevailing notions of modesty or decency; lewd."

Respondent argues persuasively that this definition is consistent with the clear statutory concern for deterring annoying telephone calls. The purpose of the statute was to protect an individual's right to privacy from annoying intrusions. Accordingly, language that qualifies as "obscene" under a common or dictionary definition would fall within the meaning of the statute. The Legislature did not intend to deter intentional and annoying telephone calls containing "obscene" language dealing with sex and appealing to the prurient interest under the *Miller* standard, while exempting equally annoying telephone calls containing language that would be considered "obscene" under a common or dictionary definition.

Appellant argues that this court must apply the *Miller* definition of "obscene" because the term is not defined under statute and the only definition for "obscene" under federal or California decisions is in accord with *Miller.*[6] Appellant's argument is unpersuasive because the federal and California cases applying the *Miller* definition of obscenity are distinguishable as to the context in which the term "obscene" is defined. Further, this court finds persuasive case authority from other jurisdictions that have applied a common or dictionary definition of obscenity. These factors

---

[6]It is not disputed that the language used by the appellant would not be considered "obscene" under a traditional *Miller* definition.

support the position that the *Miller* definition is not properly applicable in the context of a telephone harassment statute.

The United States Supreme Court set forth the definition of obscenity in *Miller* for application to "obscene material" or "works" that required First Amendment scrutiny.[7] Chapter 7.5 of the California Penal Code (§§ 311-312.5) governs crimes involving "obscene matter." The California Supreme Court adopted the *Miller* standard for obscenity crimes under that Penal Code chapter. (*Bloom* v. *Municipal Court* (1976) 16 Cal.3d 71, 77 [127 Cal.Rptr. 317 [545 P.2d 229].) Penal Code section 311 from that chapter defines "obscene matter" and "obscene live conduct" using *Miller* standards.[8]

However, conduct under section 653m[9] neither qualifies as "obscene matter" or "obscene live conduct" as defined in Penal Code section 311 nor was it intended to fall within such definition. It is not included in chapter 7.5 at all. Rather section 653m is contained in "miscellaneous offenses" appearing in title 15, chapter 2. Nothing in this provision suggests a statutory intent to relate telephone harassment offenses under section 653m to the obscenity crimes set forth in Penal Code section 311 et seq.

Appellant cites a number of federal and California cases that apply the *Miller* definition of obscenity. However, none of the cited authority applies

---

[7]The United States Supreme Court specifically set forth the definition of obscenity in *Miller* as: "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, [citations]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value." (*Miller* v. *California*, *supra*, 413 U.S. at p. 24 [37 L.Ed.2d at p. 431].)

[8]Subdivision (a) of the section defines "obscene matter" as "matter taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct; and which, taken as a whole, lacks serious literary, artistic, political or scientific value."

Subdivision (b) defines "matter" as "any book, magazine, newspaper or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statue or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials. 'Matter' also means live or recorded telephone messages when transmitted, disseminated, or distributed as part of a commercial transaction."

Subdivision (g) defines "obscene live conduct" as "any physical human body activity, whether performed or engaged in alone or with other persons, including but not limited to singing, speaking, dancing, acting, simulating, or pantomiming, taken as a whole, which to the average person, applying contemporary statewide standards [appeals] to the prurient interest and is conduct which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value."

[9]"Conduct" under the statute is the making of annoying phone calls.

the definition to intentional and annoying telephone communications.[10] Appellant further relies upon *Sable Communications of Cal.* v. *FCC* (1989) 492 U.S. 115 [106 L.Ed.2d 93, 109 S.Ct. 2829], where the United States Supreme Court applied the *Miller* definition of obscenity to a commercial pornographic telephone message service. *Sable* did not involve regulation of intentional and annoying telephone communications; rather it concerned a recorded "dial-a-porn" message.[11] All appellant's authorities deal with obscenity in the context of "materials" rather than oral telephone communications made with the intent to annoy. This distinction makes the *Miller* definition of obscenity inapplicable to a telephone harassment statute such as section 653m, because the First Amendment is not implicated in the prohibited conduct.

In accordance with the foregoing analysis, other jurisdictions have invoked a common or dictionary definition of "obscene" when applying a telephone harassment statute. For instance, the Nebraska Supreme Court rejected the *Miller* standard of obscenity, stating, "a telephone harassment statute deals with different concerns than do statutes which seek to control literary or artistic content." (*State* v. *Kipf* (1990) 234 Neb. 227 [450 N.W.2d 397, 405].) Similarly, the South Dakota Supreme Court in upholding a common or dictionary definition of "obscene" as applied to a telephone harassment statute stated: "Certainly the State has a legitimate interest in providing its citizenry with protection from perverse telephone calls. With the passage of [the South Dakota version of a telephone harassment statute], our Legislature intended to ban the type of unreasonable conduct which, by its very nature, erodes the peace of mind and solitude of an unsuspecting individual. Conduct of this nature is obviously not protected by the guarantees of free speech provided for in the First Amendment." (*State* v. *Crelly* (S.D. 1981) 313 N.W.2d 455, 457.) Further, a number of other states have upheld telephone harassment statutes by focussing on intrusive conduct of the caller rather than the slight expressions of protective speech. (*See State* v. *Keaton* (Fla. 1979) 371 So.2d 86; *State* v. *Jaeger* (Iowa 1977) 249 N.W.2d 688; *Baker* v. *State* (1977) 16 Ariz.App. 463 [494 P.2d 68].)

Even if appellant's words were *not* obscene under subdivision (a) of the statute, appellant's conduct still violated subdivision (a) since there was

---

[10]Appellant cites, for example, *United States* v. *A Motion Picture Film* (2d Cir. 1968) 404 F.2d 196; *In re Panchot* (1968) 70 Cal.2d 105 [73 Cal.Rptr. 689 [448 P.2d 385]; *Zeitlin* v. *Arnebergh* (1963) 59 Cal.2d 901 [31 Cal.Rptr. 800, 383 P.2d 152]; *In re Giannini* (1968) 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535]. All the above deal with review of materials rather than an oral telephone communication.

[11]A commercially recorded telephone message is specifically defined as "obscene matter" under Penal Code section 311, *supra*.

sufficient evidence that he threatened injury to Ms. Mischel. Subdivision (a) not only prohibits intentional and annoying phone calls using obscene language, but also intentionally annoying phone calls which threaten to inflict injury.

■ Appellant's final challenge is that his conviction must be reversed because the prosecution failed to introduce expert testimony on whether appellant's words were "obscene" by contemporary community standards. Appellant cites no applicable authority for this contention. Further, since, as discussed *ante*, the crime of violation of section 653m, making intentional and annoying telephone calls, is distinct from a crime relating to "obscene matter," there is no requirement that the People present evidence that appellant's words were "obscene" by contemporary community standards.

## DISPOSITION

The judgment of conviction is affirmed.

Turner, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied July 16, 1991, and appellant's petition for review by the Supreme Court was denied October 3, 1991.