178 Cal.App.4th 915 (2009)
In re C.C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
C.C., Defendant and Appellant.
No. C061230.
Court of Appeals of California, Third District.
October 27, 2009.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*917 Washington & Heithecker, George E. Washington, Philip H. Heithecker and Tahj E. Gomes for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
CANTIL-SAKAUYE, J.
C.C. sent his former girlfriend two text messages expressing strong negative feelings about their breakup. A delinquency petition charged him with criminal threats and making a threatening or obscene telephone communication. (Pen. Code, §§ 422, 653m, subd. (a).)[1] The People dismissed the criminal threat count and the juvenile court sustained the petition, finding C.C. sent threatening or obscene texts.
The juvenile court placed C.C. on informal probation and ordered him to write a 500-word essay on the Columbine High School shootings. C.C. completed his essay and filed this timely appeal.
We conclude C.C.'s text messages were neither threatening nor obscene as those terms are used in section 653m. They did not threaten any physical harm, as required by statute. Nor, read in context, did the vulgar language he used qualify as obscene. Accordingly, we reverse for lack of substantial evidence. We need not reach C.C.'s alternative constitutional claims.

FACTS
C.C., aged 16, sent S. two text messages. We provide them in full, redacting the names:
"no [S.] im gonna come to school with one of [P.'s] gun and kill half the school ill load everyone with bullets and then shoot myself in the head right in front of u.
*918 "just to show u how much u pushed me[.]"
"fuck u u stupid fuckin girl!
"fuck u!!
"god u stupid little fuckin cunt!
"god i waited to kiss u for a fuckin month its been two weeks ur kissing ppl [Sh.'s] friends try to cuddle with me and i push them off ur all i think about i do drugs now because of u because u r constantly hurting me i told u i cheating on u cause i didnt want to hide things from u i could have and i could have been happy but no ....
"u pushed me to cheat on u u would constantly tease me and fuck with me and put me thru things those were all bitch moves and i took them i cheated on u because of that u find a fuckin guy that will stay with u when u tease but dont put out and i waited all that time u will probably fuck [B.] right after he wins the [football game] i fuckin hate u i wanna kill myself cause u put me thru all this but only ppl c my bad side not ur shitty side cause ur a cheerleader and ill i did was b nice and i get picked on so fuck u [S.]
"god ur a lyer and a jerk.
"fuck."
S., aged 16, testified she had dated C.C. for a year and a half when she received these texts on October 6, 2008. She testified the words in the texts are in common use at their high school. Another student testified the words were in common use at school, and it was stipulated a third student would so testify.
S. testified she was not annoyed by the texts or offended by the use of the swear words. C.C. sent her an apology for the language he had used and they are again friends. She understood that C.C. was upset about their breakup. S. did not report the texts to the police, but she told a friend, and word spread to other students, one of whom told the police.
A peace officer testified he spoke to C.C., who expressed regret for the texts, explaining that they were sent in response to "a heated argument."
*919 The juvenile court found that the texts were sent with the intent to annoy, and that the first text constituted a threat and that both texts were obscene.

DISCUSSION
"When the sufficiency of the evidence is challenged on appeal, we apply the familiar substantial evidence rule. We review the whole record in a light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense." (In re Ryan D. (2002) 100 Cal.App.4th 854, 859 [123 Cal.Rptr.2d 193] (Ryan D.); see People v. Raley (1992) 2 Cal.4th 870, 886, 891 [8 Cal.Rptr.2d 678, 830 P.2d 712].)
Section 653m, subdivision (a) provides: "Every person who, with intent to annoy, telephones or makes contact by means of an electronic communication device with another and addresses to or about the other person any obscene language or addresses to the other person any threat to inflict injury to the person or property of the person addressed or any member of his or her family, is guilty of a misdemeanor. Nothing in this subdivision shall apply to telephone calls or electronic contacts made in good faith."
For purposes of this appeal we will assume substantial evidence shows "intent to annoy," although the point is debatable and C.C.'s claim that the intent to communicate painful feelings does not equate to an "intent to annoy" within the meaning of section 653m carries some force. We will separately consider the claims that the texts were threatening or were obscene under section 653m.

I.

A Physical Threat is Required by Section 653m[*]

II.

Neither Text Was "Obscene" Under Section 653m
(1) The juvenile court found both texts were "obscene" as proscribed by the second prong of section 653m. We disagree, because it is inappropriate to *920 extract isolated words from a private message and impose criminal liability based on their abstract offensiveness. Viewing C.C.'s texts in context, as we must, we find no basis for criminal liability.
(2) In People v. Hernandez (1991) 231 Cal.App.3d 1376, 1384-1386 [283 Cal.Rptr. 81] (Hernandez), the term "obscene" as used in section 653m was interpreted to mean something different from the term as used in the context of erotic expression, such as in defining "`[o]bscene matter'" or "`[o]bscene live conduct.'" (§ 311, subds. (a), (g); 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Sex Offenses and Crimes against Decency, § 83; CALJIC No. 16.182; CALCRIM No. 1142). In such contexts, referred to in Hernandez, supra, at pages 1385-1386 as "the Miller standard" (see Miller v. California (1973) 413 U.S. 15 [37 L.Ed.2d 419, 93 S.Ct. 2607]), "`[o]bscene matter'" generally refers to something "that to the average person, applying contemporary statewide standards, appeals to the prurient interest, that, taken as a whole, depicts or describes sexual conduct in a patently offensive way, and that, taken as a whole, lacks serious literary, artistic, political, or scientific value" (§ 311, subd. (a)(1)).
Hernandez involved a traditional type of annoying telephone call, where Hernandez repeatedly called a woman over a two-week period, hurling abuse at her by using vile terms, such as calling her a "`fat bitch,' a `whore,' and a `c___.'" (Hernandez, supra, 231 Cal.App.3d at p. 1380 & fn. 4.)
In that factual context, Hernandez approved an instruction defining "`obscene'" as used in section 653m as "`offensive to one's feelings, or to prevailing notions of modesty or decency; lewd.'" (Hernandez, supra, 231 Cal.App.3d at p. 1384.) Hernandez explained that because the purpose of the statute "was to protect an individual's right to privacy from annoying intrusions," section 653m was not limited to "`obscene' language dealing with sex and appealing to the prurient interest under the Miller standard, while exempting equally annoying telephone calls containing language that would be considered `obscene' under a common or dictionary definition." (Hernandez, supra, at p. 1384.) Hernandez in part noted that sister state statutes had been construed to include a similarly broad definition of "obscene" in order to deter harassing telephone calls and thereby protect the peace and solitude of telephone owners. (Id. at p. 1386; see generally Annot., Use of Telephone to Annoy or Harass (1979 & 2008 supp.) 95 A.L.R.3d 411; Comment, Constitutionally Regulating Telephone Harassment: An Exercise in Statutory Precision (1989) 56 U.Chi. L.Rev. 1403.)
Because C.C. does not challenge the Hernandez definition of "obscene" as the word is used in section 653m, for the purposes of this appeal we accept it as accurate. That definition has three discrete parts, "`offensive to one's *921 feelings, or to prevailing notions of modesty or decency; lewd.'" (Hernandez, supra, 231 Cal.App.3d at p. 1384.) C.C.'s texts do not fit within any of those parts.
We need not consider whether the texts were objectively of the kind that would offend someone's feelings sufficiently for criminal liability, because S. testified without contradiction that she was not subjectively offended.
The texts were not "lewd." The first text has nothing arguably lewd in it. Although the second text used vulgarities derived from sexually related terms such as "fuck" and "cunt," those words were not used lewdly. They were expletives used as verbs and adjectives to emphasize the depth of his feelings, and in a couple of places as insults to describe how he felt about S. as a result of her conduct. For example, calling her a "cunt" did not import any lewd thoughts about her; it conveyed anger and insult towards her. There was one explicit sexual usage, when C.C. posited that S. would "fuck" another boy after a football game, but the term "fuck" was merely a synonym for sexual congress, it conveyed no more salacious meaning than a more refined term for that activity.
Neither text was offensive to prevailing notions of modesty or decency. As for the second text, the words "fuck" and "bitch" and "cunt" are generally eschewed in polite settings, which is why in court the parties and witnesses generally referred to the "F word" or "B word" or "C word." But each has acquired secondary meanings through modern usage. In particular, the evidence was uncontradicted that these words are in common use at the high school, the venue in which the relationship existed, and in which C.C.'s pointed communications about his feelings were sent. For this reason we reject the Attorney General's view that the use of the "C word" and the like at trial proves the words are necessarily indecent.
(3) The meaning of words is always contextual. As provided in the erotic obscenity arena, matter must be judged in its entirety, including the context in which it is presented. (§ 311, subd. (a) [matter must be "taken as a whole"]; see People v. Goulet (1971) 21 Cal.App.3d Supp. 1, 3-4 [98 Cal.Rptr. 782].)
The importance of context is highlighted by In re Price (1970) 4 Cal.App.3d 941 [84 Cal.Rptr. 585] (Price). Price upheld a charge of using obscene language in public (former § 311.6; Stats. 1961, ch. 2147, § 5, pp. 4427, 4428), when a minor called police officers, inter alia, "`mother fuckers,'" because the majority interpreted it to mean "a vulgar description of sexual intercourse with one's mother." (Price, supra, at pp. 944, 946.) A dissenting opinion pointed out that the majority's reading of the words was wrong: "The *922 term `f g pigs' in the context in which it was used referred not to copulation of porcine animals but was rather a highly insulting epithet directed to the police officers. The term `f g law' referred not to the law of sexual intercourse but a derogatory reference to the law in general. The average person would not have construed the phrase `f k them' uttered by appellant in reference to the police officers as an invitation to engage in sexual activities with them. Appellant's use of the vulgarism describing the filial partner in an oedipal relationship is fairly to be viewed as an epithet rather than as a phrase appealing to a shameful or morbid interest in intra-family sex." (Price, supra, 4 Cal.App.3d at p. 948 (dis. opn. of Thompson, J.).)
Although we are not applying the same definition of obscenity at issue in Price, the point is that the dictionary definitions of words such as "fuck" or "cunt" may not reflect the meaning conveyed by those words as used in contemporary society. Meaning generally hinges on the circumstances in which words are used.
As we explained in a case involving an alleged criminal threat (§ 422), "The circumstances surrounding a communication include such things as the prior relationship of the parties and the manner in which the communication was made." (Ryan D., supra, 100 Cal.App.4th at p. 860.) In this case, the words were used by an agitated, frustrated high school boy to his former high school girlfriend, and both parties to the communication attended a high school where such language is in common parlance. The messages concern intimate matters between the parties, and were not spoken aloud in a group, but texted privately inter sese.
To extract isolated words like "fuck" and "cunt" from such a communication and predicate criminal liability on them because they are "offensive" in the abstract is to stretch the Hernandez definition far beyond its utility, which was to broaden the meaning of obscene beyond its usage in reference to erotic material, in order to deter unwanted, harassing communications that intrude on a person's peace and solitude. (Hernandez, supra, 231 Cal.App.3d at pp. 1384, 1386.)
Similarly, while the violence described in the first text is arguably upsetting, it is not obscenethat is, offensive to prevailing notions of modesty or decencyparticularly when read in the context in which the text was sent.
In short, whatever may be said about the manner in which C.C. expressed himself, it was not criminal.

*923 DISPOSITION
The judgment is reversed for lack of evidence.
Blease, Acting P. J., and Robie, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part I, of the Discussion.
[1] Hereafter, undesignated statutory references are to the Penal Code.
[*] See footnote ante, page 915.