Filed 5/20/14

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | BR 051027 |
| Plaintiff and Respondent, | ) | (Central Trial Court |
| v. | ) | No. 2CA05968) |
| JOHN ASTALIS, | ) | |
| Defendant and Appellant. | ) | **OPINION** |

APPEAL from a judgment of the Superior Court of Los Angeles County, Central Trial Court, Renee F. Korn, Judge. Affirmed.

Deborah Blanchard for Defendant and Appellant.

Michael N. Feuer, City Attorney, and Debbie Lew, Assistant City Attorney, for Plaintiff and Respondent.

*INTRODUCTION*

Defendant John Astalis appeals the judgment of conviction following a jury trial for violating a restraining order (Pen. Code, § 273.6, subd. (a)), and for making repeated telephone calls and repeated contact by means of an electronic communication device with the intent to annoy or harass (Pen. Code, § 653m, subd. (b)). On appeal, he seeks reversal of only the conviction for making repeated calls and repeated electronic contacts, contending that Penal

1

Code section 653m, subdivision (b) is unconstitutionally overbroad under the First Amendment, and violates due process of law because it is vague. As discussed below, we affirm.

*BACKGROUND*

A complaint charged defendant with violating Penal Code section 653m, subdivision (b). It was alleged that, with the intent to annoy and harass, he made repeated telephone calls, and repeated contact by means of electronic communication devices, and by a combination thereof, directed at Bondan Kosenko. Defendant pled not guilty and the case proceeded to trial.

The evidence at trial pertinent to the Penal Code section 653m, subdivision (b) charge showed that defendant became extremely jealous upon learning that Kosenko stayed at the home of defendant's estranged wife, Anne-Marie Ackerman. During a span of about one month, defendant called Kosenko on the telephone several times and left voicemail messages, insisting Kosenko call him, and accusing Kosenko of having "sex parties" at the house. Defendant during this time also sent Kosenko e-mail and text messages, calling him "Beelzebub" and other derogatory names, and alleging Kosenko was engaging in lewd activity at the house in front of defendant's minor children. Both Kosenko and Ackerman testified Kosenko did not engage in any such behavior, nor was there any reason for defendant to so suspect. In the following four months, defendant left over 40 postings on Kosenko's Facebook page, unjustifiably stating Ackerman was mentally ill, and leaving many incoherent messages. Kosenko testified he felt harassed, intimidated, threatened, and annoyed by the calls and contacts. William Bowles and Mary Ann Quintana testified on behalf of defendant that they knew Ackerman, and in their opinion, Ackerman was not an honest person. Defendant testified that he only tried to contact Kosenko because he was concerned about the welfare of his minor children who lived with Ackerman, and he did not intend to annoy or harass Kosenko.

Defendant was found guilty, and the court imposed a probationary sentence. He filed a timely notice of appeal.

*DISCUSSION*

I.     *The Statute Is Not Overbroad*

*General Principles*

The First Amendment to the United States Constitution states that "'Congress shall make no law . . . abridging the freedom of speech . . . .'" (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 133.)  This is a fundamental right applicable to the states through the due process clause of the Fourteenth Amendment.  (*Id.* at pp. 133-134.)

Under the overbreadth doctrine, "litigants may challenge a statute not because their own rights of free expression are violated, but because the very existence of an overbroad statute may cause others not before the court to refrain from constitutionally protected expression. [Citations.]" (*In re M.S.* (1995) 10 Cal.4th 698, 709.)  In order to not be unconstitutionally overbroad, "statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. [Citations.]"  (*Broadrick v. Oklahoma* (1973) 413 U.S. 601, 611-612.)

Courts have "insisted that the overbreadth involved be 'substantial' before the statute involved will be invalidated on its face." (*New York v. Ferber* (1982) 458 U.S. 747, 769.) "Substantial overbreadth" requires a showing of actual or serious potential encroachments on fundamental rights.  "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge. . . . [¶] . . . [T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds. [Citations.]"  (*Members of City Council of Los Angeles v. Taxpayers for Vincent* (1984) 466 U.S. 789, 800-801.)  Facial overbreadth "is, manifestly, strong medicine" which has been used "sparingly and only as a last resort," and which "has not been invoked when a limiting construction has been or could be placed on the challenged statute." (*Broadrick v. Oklahoma*, *supra*, 413 U.S. at p. 613.)

*Application to the Statute*

Penal Code section 653m, subdivision (b) provides, "Every person who, with intent to annoy or harass, makes repeated telephone calls or makes repeated contact by means of an electronic communication device, or makes any combination of calls or contact, to another person is, whether or not conversation ensues from making the telephone call or contact by means of an electronic communication device, guilty of a misdemeanor. Nothing in this subdivision shall apply to telephone calls or electronic contacts made in good faith or during the ordinary course and scope of business." The term "electronic communication device" is defined to include "telephones, cellular phones, computers, video recorders, facsimile machines, pagers, personal digital assistants, smartphones, and any other device that transfers signs, signals, writing, images, sounds, or data." (Pen. Code, § 653m, subd. (g).)

With respect to the requirement that the statute serve the "compelling needs of society" (*Broadrick v. Oklahoma*, *supra*, 413 U.S. at p. 612), we are guided by *People v. Hernandez* (1991) 231 Cal.App.3d 1376, 1382 (*Hernandez*). The Court of Appeal held a former version of Penal Code section 653m, subdivision (b) was not unconstitutionally overbroad. The statute at the time provided a person was guilty of a misdemeanor if he or she made a telephone call, "with intent to annoy another," and "without disclosing his true identity to the person answering the telephone." (*Id*. at p. 1379, fn. 1.) *Hernandez* found "[t]he 'protection of innocent individuals from fear, abuse or annoyance at the hands of persons who employ the telephone, not to communicate, but for other unjustifiable motives,'" was a compelling government interest supporting regulation of speech. (*Id.* at p. 1381.)

Protecting individuals from unwanted calls and contact in the present version of the statute—which applies to both making repeated telephone calls and making repeated contact by means of electronic communication devices, including sending text messages and leaving messages on the internet (see Pen. Code, § 653m, subd. (g))—is also a compelling government interest. The government has an important interest in protecting the substantial privacy interests of individuals from being invaded in an intolerable manner. (See *Cohen v. California* (1971) 403 U.S. 15, 21.) "'The purpose of [Penal Code] section 653m is to deter people from

4

making harassing [communications] with the intent to annoy and thus, to secure an individual's right to privacy against unwanted intrusion.' [Citation.]" (*People v. Powers* (2011) 193 Cal.App.4th 158, 164.)

Although not considered by *Hernandez*, the government has a strong interest in protecting persons from abusive intrusions by means of electronic communication devices, including repeated contact through the internet. "Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering" (*United States v. Peterson* (2nd Cir. 2001) 248 F.3d 79, 83), and computers and the Internet now "'comprise[] the "backbone" of American academic, governmental, and economic information systems. . . .' [Citation.]" (*In re Stevens* (2004) 119 Cal.App.4th 1228, 1234.)

In addition, even though the present version of the statute does not require that a defendant fail to "disclose his true identity to the person" being called or contacted, the government interest in protecting individuals from unwanted intrusions can be as strong, if not stronger, when a person identifies himself. Receiving repeated calls and electronic communications from a person the recipient knows to be the same person that has contacted him over and over could be considered at least as intolerable as receiving contacts from an anonymous caller.

Regarding the requirement that the statute must be "narrowly drawn" in restricting or burdening the exercise of free speech under the First Amendment (*Broadrick v. Oklahoma*, *supra*, 413 U.S. at p. 611), we find the statute passes constitutional muster. We construe the statute's terms in order to preserve the statute's constitutionality. "It is the duty of this court in construing a statute to ascertain and give effect to the intent of the Legislature. [Citations.] And it is fundamental that the Legislature will not be presumed to intend unconstitutional results. [Citations.]" (*People v. Freeman* (1988) 46 Cal.3d 419, 425.) "[W]here "'the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution."' [Citation.]" (*People v. Davenport* (1985) 41 Cal.3d 247, 264.)

5

The requirement in the statute that a defendant *intend* to annoy or harass serves to narrow the law because, by referring to a person's "'intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.' [Citation.]" (*Stark v. Superior Court* (2011) 52 Cal.4th 368, 391.) Since specific intent to annoy or harass is required, a person who merely acts under a mistake of fact or by accident does not violate the statute. (See Pen. Code, § 26, subds. (3), (5).) "A specific intent requirement narrows the scope of telephone harassment statutes because it requires the caller to intend to cause the recipient actual psychic or emotional harm." (Royall, *Constitutionally Regulating Telephone Harassment: An Exercise in Statutory Precision* (1989) 56 U.Chi. L.Rev. 1403, 1408.)

Penal Code section 653m, subdivision (b) requires the defendant make "repeated" calls or contacts. "Repeated" means "recurring" or "frequent." (Webster's 9th New Collegiate Dict. (1988) p. 998; 2 Oxford English Dict. (1971) p. 2494; see *Scott v. State* (Tex. Crim. App. 2010) 322 S.W.3d 662, 669, fn. 12 [applying this definition in upholding telephone harassment statute].) Defining the word "repeated" in this manner serves to narrow the scope of the statute; "[p]rudence may justify a hands-off policy for single calls made with the intent to harass, but as harassing calls are repeated the state interest in intervening to protect the recipient becomes more compelling." (Royall, *supra*, 56 U.Chi. L.Rev. at p. 1431; see *Scott v. State*, *supra*, 322 S.W.3d at p. 669, fn. 12.)

The statute further requires that the person intend to "annoy" or "harass." "Annoy," for purposes of annoying or molesting a child under Penal Code section 647.6, subdivision (a)(1), means "conduct designed to disturb, irritate, offend, injure, or at least tend to injure, another person. [Citations.]" (*People v. Lopez* (1998) 19 Cal.4th 282, 289.) "Harass," in the context of stalking under Penal Code section 646.9, "means . . . a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose." (Pen. Code, § 646.9, subd. (e).)

Use of these definitions is fair and reasonable given the similarity between the unwanted intrusions involved in the laws. Regarding both annoying children and stalking, the government's interest is, in part, to protect the privacy of the victims, a like interest which is

6

served by the present statute. (See *People v. Kongs* (1994) 30 Cal.App.4th 1741, 1752 [Pen. Code, § 647.6, subd. (a)(1) serves government's substantial interest in preventing conduct which invades a child's privacy and security]; *People v. Borrelli* (2000) 77 Cal.App.4th 703, 716 [aim and effect of Pen. Code, § 646.9 is to protect individuals in the exercise and enjoyment of their "constitutional rights of privacy and the pursuit of happiness"]; cf. *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1412 [Code Civ. Proc, § 527.6, providing expedited injunctive relief to victims of harassment, was enacted "'to protect the individual's right to pursue safety, happiness and privacy'"].) In addition, the harassing conduct in stalking can be performed by telephone or by means of electronic communication devices, such as e-mail or text messages (see Pen. Code, § 646.9, subd. (g)), and there is no reason why a child could not be annoyed through the telephone or by electronic communications.

Lastly, we also determine the statute does not pose "a realistic danger" that it will "significantly compromise recognized First Amendment protections." (*Members of City Council of Los Angeles v. Taxpayers for Vincent*, *supra*, 466 U.S. at p. 801.) A telephone harassment statute can be found unconstitutional if it does not exempt a substantial number of legitimate calls. "[T]here are times when citizens make legitimate calls with the intent to annoy the recipient of the call, e.g., a consumer calling the seller or producer of a product to express dissatisfaction of product performance, a businessman calling another to protest failure to perform a contractual obligation, a constituent calling his legislator to protest the legislator's stand on an issue, etc." (*State v. Dronso* (1979) 90 Wis.2d 110, 117 [279 N.W.2d 710, 714], fn. omitted.) If such calls fall within the sweep of a statute, "[s]uch proscription would be a real and substantial interference with free speech." (*Ibid*., fn. omitted.) The statute here does not suffer from such an infirmity because it specifically exempts "telephone calls or electronic contacts made in good faith or during the ordinary course and scope of business." (Pen. Code, § 653m, subd. (b); see *State v. Elder* (Fla. 1980) 382 So.2d 687, 691 [upholding constitutionality of telephone harassment statute which included similar exemption for good faith business calls].)

7

II.    *The Statute Does Not Violate Due Process*

"The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution, each guarantee that no person shall be deprived of life, liberty, or property without due process of law.  This constitutional command requires 'a reasonable degree of certainty in legislation, especially in the criminal law . . . .' [Citation.]  '[A] penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' [Citations.]  [¶]  It is established that in order for a criminal statute to satisfy the dictates of due process, two requirements must be met.  First, the provision must be definite enough to provide a standard of conduct for those whose activities are proscribed. [Citations.] . . . [¶]  Second, the statute must provide definite guidelines for the police in order to prevent arbitrary and discriminatory enforcement. [Citations.]" (*People v. Heitzman* (1994) 9 Cal.4th 189, 199-200.)

Narrowly interpreted to preserve its constitutionality under the First Amendment, a person violates the statute only when he or she (1) makes "repeated" contacts, meaning "recurring" or "frequent" contacts; (2) with the specific intent to "annoy," meaning intentionally engaging in "conduct designed to disturb, irritate, offend, injure, or at least tend to injure, another person," or with the specific intent to "harass," meaning engaging in "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose."  Finally, calls or contact in "good faith or during the ordinary course and scope of business" are excluded from the statute. (Pen. Code, § 653m, subd. (b).)  Thus construed, Penal Code section 653m, subdivision (b) is not vague on its face.

The elements of the statute satisfy the first requirement of due process because they are definite enough for a person to understand the law.  The statute provides a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly." (*Grayned v. City of Rockford* (1972) 408 U.S. 104, 108.)  The requirement that persons have the *specific intent* to annoy or harass, in particular, provides a clear standard of

8

conduct for persons to obey. "Courts are in virtually unanimous agreement that the requirement of specific intent (that is, requiring the government to prove that the caller's subjective purpose in making the call was to annoy or harass) saves [harassment] statutes . . . from vagueness problems." (*McKillop v. State* (Alaska Ct.App. 1993) 857 P.2d 358, 364, fn. 6 [collecting cases].)

Similarly, the statute satisfies the second requirement of due process because its specific terms provide law enforcement with sufficient guidelines to check arbitrary and discriminatory enforcement of the law. The statute is clear regarding what a suspect must do to be guilty of the crime and does not vest excessive discretion in law enforcement. (See *People v. Richardson* (1994) 33 Cal.App.4th Supp. 11, 16.)

*DISPOSITION*

The judgment of conviction is affirmed.

_____
RICCIARDULLI, J.

WE CONCUR.

_____
KUMAR, Acting P. J.

_____
B. JOHNSON, J.