Filed 5/21/15  Croteau v. Croteau CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JESSIE G. CROTEAU, | D065942 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. DV038367) |
| HANS S. CROTEAU, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Cindy Davis, Judge.  Affirmed.

Hans S. Croteau, in pro. per., for Defendant and Appellant.

Patrick M. Howe for Plaintiff and Respondent.

Jessie Croteau (Jessie) petitioned for a "stay away" and "no contact" restraining order, pursuant to the provisions of the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq. (DVPA)),[1] against his brother, Hans Croteau (Hans).  Jessie's petition alleged Hans had a long-standing animosity toward Jessie arising from litigation between

---

[1]     All further statutory references are to the Family Code unless otherwise specified.

them that had culminated in a December 2013 incident (after Hans suffered another and significant setback in litigation) when Hans came to Jessie's home at night and vandalized Jessie's home and car. The court found in favor of Jessie, and issued the requested order.

Hans challenges the order, asserting (1) there was no evidence to support the order, (2) the provisions of the DVPA are unconstitutional for vagueness and overbreadth, and (3) the court erroneously admitted certain evidence.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. Plaintiff's Evidence

On December 17, 2013, between 9:00 and 9:30 p.m., Jessie was in the living room of his home, waiting for his 12-year-old daughter to put on her shoes to go out Christmas shopping. Jessie's dog began barking, and he looked outside through a bay window and saw Hans on the steps of the front porch. Jessie saw that Hans was carrying what appeared to be a white, five-gallon bucket. Hans turned and saw Jessie looking at him, and reacted by crouching and going back down the steps and "jetting" away. Jessie did not immediately react or go to the door because he was shocked to see Hans on his porch at that time of night.

A few minutes later, Jessie opened the front door to leave with his daughter. Jessie first looked to see if Hans had left any legal papers on the porch, as he had on prior occasions, but saw no papers. Jessie started to walk down the steps but immediately slipped and fell flat on his back. He tried to warn his daughter not to follow, but she also

partially slipped and hit her knee. Jessie then observed there was an oily substance on his steps, the driveway, and the family car. Jessie spent hours that night trying to clean up the oily substance. Jessie took pictures of the damage, reported the vandalism to the police, and also reported it to his homeowner's insurance company.

Jessie did not see Hans pouring the oily substance on his property. However, the substance had to have been deposited after 8:30 p.m., because his wife had been driving the family car that night and did not arrive home until 8:30 p.m. Jessie also asked his neighbors if anyone else had experienced any vandalism that night and learned his home was the only one vandalized that evening.

B. Defense Evidence

Hans called two witnesses—his mother and a close friend—who both claimed Hans had been with them the entire evening of December 17. Hans also testified and claimed he had not been to Jessie's house since 2007, and was with his mother and his friend that night.

C. The Ruling

After hearing the evidence, the court ruled Jessie had demonstrated, by the requisite preponderance of the evidence, that Hans had engaged in abusive behavior toward him, within the meaning of former Family Code section 6203, subdivision (d) (now § 6203, subd. (a)(4)), because the court credited Jessie's testimony that Hans was responsible for the vandalism to Jessie's property on December 17, 2013, and disbelieved the alibi evidence proffered by Hans. The court ruled the vandalism constituted both

3

damage to personal property and disturbing the peace of another party, within the meaning of section 6320, subdivision (a), and justified issuance of the requested restraining order. Hans timely appealed the order.

## II

## ANALYSIS

### A. The DVPA and Standard of Review

The DVPA defines domestic violence as "abuse" perpetrated against enumerated individuals, including "[a]ny . . . person related by consanguinity or affinity within the second degree." (§ 6211, subd. (f).) Its purpose is to prevent the recurrence of acts of such abuse and to provide for a separation of those involved to resolve its underlying causes. (§ 6220.) To this end, the DVPA provides for the issuance of restraining orders, either ex parte or after a hearing, that enjoin specific acts of abuse. The DVPA defines "abuse" to include an act that involves any behavior that has been or may be enjoined under section 6320. (§ 6203.) The behavior that may be enjoined under section 6320 includes "destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members." (§ 6320, subd. (a).)

A trial court is vested with discretion to issue a protective order under the DVPA when the applicant shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse. (§ 6300; *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 421.) This

4

level of proof, which has been construed to impose a preponderance of the evidence standard (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137), permits a court to issue the requested restraining order if the applicant shows the requisite abuse by a preponderance of the evidence. (Cf. *Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1138.)

On appeal, a reviewing court applies the substantial evidence standard of review to a trial court's factual findings, "regardless of the burden of proof at trial." (*In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 604.) Our sole inquiry is "whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted," supporting the court's finding. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.) The testimony of a single witness may provide sufficient evidence (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614), even if contradicted by the testimony of other witnesses, because " ' " 'it is the exclusive province of the [trier of fact] to determine the credibility of a witness . . . .' " ' " (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.)

B. Substantial Evidence Supports the Order

Hans claims there was no substantial evidence to support the court's finding he committed the alleged acts of vandalism. However, Jessie testified the vandalism occurred in a very narrow time window (between 8:30 and 9:15 p.m.), during which he saw Hans in one of the areas vandalized. Moreover, the vandalism was caused by use of a liquid, and Jessie saw Hans carrying a bucket of the type that would facilitate carrying

and dispersing a liquid. Third, Jessie testified Hans fled when he realized Jessie had observed him, which permits an inference of guilt. (See, e.g., *People v. Mulqueen* (1970) 9 Cal.App.3d 532, 543 [flight supports an inference that the actor was conscious of guilt].) There is substantial evidence to support the finding Hans committed the acts of vandalism.

C. Hans Waived His Evidentiary Objections

Hans appears to complain that the trial court erred when it took judicial notice of documents that showed (1) Hans, as well as Hans's mother, filed numerous lawsuits in the courts over the years, and (2) Hans had been declared a vexatious litigant in 2005.[2] However, Hans does not in his brief identify what (if any) objection he lodged to this evidence[3] and, absent a timely and specific objection to evidence, an appellant may not complain on appeal as to admission. (*People v. Riel* (2000) 22 Cal.4th 1153, 1185.)

---

[2]     Hans also purports to challenge the constitutionality of the vexatious litigant statute. Hans cites no authority that permits a litigant collaterally to attack (in an unrelated proceeding) a determination declaring him to be a vexatious litigant, and it appears the proper channel to challenge the propriety of that determination is on appeal from a judgment in which the litigant suffered some injury under the vexatious litigant statute. (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 635.) Moreover, even were Hans's claims cognizable here, the constitutionality of the vexatious litigant statute has been repeatedly upheld by both the federal and state courts (see, e.g., *Wolfe v. George* (9th Cir. 2007) 486 F.3d 1120; *Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780; *Fink v. Shemtov* (2010) 180 Cal.App.4th 1160), and Hans presents no argument explaining why those cases were wrongly decided.

[3]     " 'It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.' [Citations.] If a party fails to support an argument with the necessary citations to the record, . . . the argument [is] deemed to have been waived." (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

D. Hans's Constitutional Challenges to the DVPA

*Hans's "Vagueness" Challenge*

Hans argues the DVPA is unconstitutional because it permits entry of the restraining order on "reasonable proof of a past act or acts of abuse" (§ 6300), and Hans asserts that employing the term "reasonable proof" renders the statute unconstitutionally vague. We begin with the oft noted principle " '[a]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity.' " (*Personal Watercraft Coalition v. Marin County Bd. of Supervisors* (2002) 100 Cal.App.4th 129, 137, quoting *Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 484.) The presumption of validity prevails if there is a reasonable degree of certainty in the text of the challenged provisions. (*People v. Heitzman* (1994) 9 Cal.4th 189, 199.) A statute " 'will not be held void for uncertainty if any reasonable and practical construction can be given its language.' [Citation.] It will be upheld if its terms may be made reasonably certain by reference to other definable sources" (*American Civil Liberties Union v. Board of Education* (1963) 59 Cal.2d 203, 218), including reference to other statutes or code provisions (*ibid*.; accord, *Rose v. Locke* (1975) 423 U.S. 48, 49-50) or other "definable sources," such as judicial decisions and the common law. (See, e.g., *People v. McCaughan* (1957) 49 Cal.2d 409, 414.) Here, the standard of "reasonable proof" is not impermissibly vague for purposes of the due process clause because the courts have determined the DVPA requires the applicant to satisfy the "preponderance of the evidence" standard. (*Gdowski v. Gdowski, supra,* 175

7

Cal.App.4th at p. 137; cf. *Bookout v. Nielsen, supra,* 155 Cal.App.4th at p. 1138.)

Because Hans raises no claim that satisfaction of the "preponderance of the evidence"

standard is itself an impermissibly vague standard, his vagueness challenge is not

persuasive.

*Hans's "Overbreadth" Challenge*

Hans also argues the DVPA is unconstitutional because it is overbroad. He asserts

that the DVPA—by including (among the types of "acts of abuse" that can trigger a

restraining order) the "perfectly legal expressive conduct" of "making innocent telephone

calls" or "mailing innocent letters"—is facially overbroad because it prohibits "not only

unprotected speech, but also protected speech." (*Ketchens v. Reiner* (1987) 194

Cal.App.3d 470, 475.)

In *New York v. Ferber* (1982) 458 U.S. 747, the United States Supreme explained

the scope of the First Amendment overbreadth doctrine:

> "[L]ike most exceptions to established principles, [the doctrine] must
> be carefully tied to the circumstances in which facial invalidation of
> a statute is truly warranted. Because of the wide-reaching effects of
> striking down a statute on its face *at the request of one whose own
> conduct may be punished despite the First Amendment*, we have
> recognized that the overbreadth doctrine is 'strong medicine' and
> have employed it with hesitation, and then 'only as a last resort.'
> [Citation.] We have, in consequence, insisted that the overbreadth
> involved be 'substantial' before the statute involved will be
> invalidated on its face. [¶] . . . [¶] In *Broadrick* [*v. Oklahoma*
> (1973) 413 U.S. 601, 615], we explained the basis for this
> requirement: [¶] '[T]he plain import of our cases is, at the very
> least, that facial overbreadth adjudication is an exception to our
> traditional rules of practice and that its function, a limited one at the
> outset, attenuates as the otherwise unprotected behavior that it
> forbids the State to sanction moves from "pure speech" toward

conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. [Citation.]' [Citation.] [¶] We accordingly held that 'particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute *must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'* " (*New York v. Ferber* (1982) 458 U.S. at pp. 769-770, italics added, fn. omitted, quoting *Broadrick v. Oklahoma, supra,* 413 U.S. at p. 615.)

Although Hans concedes *his* alleged conduct did not involve protected speech, and the vast bulk of the activities that could trigger injunctive relief likewise do *not* involve protected speech, he peremptorily asserts he can nevertheless challenge the statute because it can encompass private phone calls or private letters, and "when statutes regulate or proscribe speech . . . [citation], the transcendent value to all society of constitutionally protected expression is deemed to justify allowing 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' " (*Gooding v. Wilson* (1972) 405 U.S. 518, 520-521 [Quoting *Dombrowski v. Pfister* (1965) 380 U.S. 479, 486.) However, Hans cites no authority that a statute regulating *personal* phone calls or letters involves the type of core First Amendment conduct permitting a facial overbreadth challenge, and the courts have repeatedly noted that such speech on matters of purely private concern is entitled to less First Amendment

9

protection than speech concerning public issues. (See, e.g., *DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 882-883; *Dun & Bradsteet, Inc. v. Greenmoss Builders, Inc.* (1985) 472 U.S. 749, 759 ["speech on matters of purely private concern is of less First Amendment concern" than " 'speech on public issues' "].)

A number of cases have rejected nearly identical constitutional challenges under circumstances substantially similar to those presented here. For example, in *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, a parent obtained an injunction prohibiting harassment by her minor daughter's boyfriend, and the enjoined boyfriend challenged the injunction on the grounds that it violated his First Amendment rights. The court rejected those challenges, noting defendant's speech "was between purely private parties, about purely private parties, on matters of purely private interest. Thus, this case is ' "wholly without the First Amendment concerns with which the Supreme Court of the United States has been [struggling]" [citation]' [quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., supra,* 472 U.S. at p. 760]; and the trial court properly considered defendant's speech in determining whether to issue injunctive relief . . . ." (*Brekke,* at p. 1409.) Again, in *People v. Astalis* (2014) 226 Cal.App.4th Supp. 1, the defendant claimed Penal Code section 653m, subdivision (b), which criminalized making repeated telephone calls or repeated contact by means of an electronic communication with the intent to annoy and harass, was void as overbroad. The court rejected that argument, noting the government had a substantial interest in protecting against harassment, and the

statute did not pose a realistic danger that it would " 'significantly compromise recognized First Amendment protections.' " (*Astalis,* at pp. Supp. 6-10.)

We are confident that the observations of the United States Supreme Court in *Parker v. Levy* (1974) 417 U.S. 733 control here. In *Parker*, the court reiterated its longstanding "reluctance to strike down a statute on its face where there were a substantial number of situations to which it might be validly applied. Thus, even if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the 'remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct . . . .' " (*Id*. at p. 760.) Here, section 6203 defines abuse to include (1) intentionally or recklessly to cause or attempt to cause bodily injury, (2) sexual assault, (3) placing a person in reasonable apprehension of imminent serious bodily injury to that person or to another, and (4) any behavior that has been or could be enjoined under section 6320, which thereby also includes molesting, stalking, threatening, destroying personal property, coming within a specified distance, disturbing the peace of the other party, and telephoning or contacting by mail or otherwise. Because the vast bulk of the statute on its face " 'covers a whole range of easily identifiable and constitutionally proscribable . . . conduct' " (*Parker,* at p. 760), and the latter two categories at most cover speech "between purely private parties, about purely private parties, on matters of purely private interest[, which is] ' "wholly without the First Amendment concerns with which the Supreme Court of the United States has been struggling" ' " (*Brekke v. Wills, supra*, 125

11

Cal.App.4th at p. 1409), we conclude Hans's purported facial overbreadth challenge, which makes no effort to show the DVPA is *substantially* overbroad, is not persuasive.

DISPOSITION

The order is affirmed.  Jessie is entitled to costs on appeal.


McDONALD, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.