Filed 3/25/16

**CERTIFIED FOR PARTIAL PUBLICATION***

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | BR 052012 |
| | ) | |
| Plaintiff and Respondent, | ) | Central Trial Court |
| | ) | |
| v. | ) | No. 4CA05206 |
| | ) | |
| NOE INIGUEZ, | ) | |
| | ) | |
| Defendant and Appellant. | ) | **OPINION** |
| | ) | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David R. Fields, Judge.  Affirmed.

Fay Arfa, A Law Corporation, for Defendant and Appellant.

Michael N. Feuer, Los Angeles City Attorney, Debbie Lew, Assistant City Attorney, and John R. Winandy, Deputy City Attorney, for Plaintiff and Respondent.

\* \* \*

_____
*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III.B(2), (3), C(3) and D.

## I. *INTRODUCTION*

Defendant Noe Iniguez appeals the judgment of conviction following a jury trial. Defendant was convicted of two counts of violating a restraining order (Pen. Code, § 273.6, subd.(a)),[1] and one count of distributing a private image (§ 647, subd. (j)(4)). Defendant contends on appeal that section 647, subdivision (j)(4), is unconstitutionally vague and overbroad, the court misinstructed the jury, there was insufficient evidence to support the convictions, and the prosecutor committed misconduct during closing argument. As discussed below, we affirm.

## II. *FACTS*

At trial, Jennifer Fajardo testified she dated defendant off and on for four years, and although the relationship ended in 2011, defendant continued to contact her by repeatedly e-mailing her, texting her, and coming by her house. Fajardo sought a restraining order, and a three-year restraining order prohibiting defendant from harassing, attacking, striking, or directly or indirectly contacting her was issued by the court. Fajardo worked as a secretary and bookkeeper for a painting contractor's company, and also acted as the administrator of the company's Facebook page. Whenever someone would post a message on her employer's Facebook page, Fajardo would receive an e-mail notification alerting her of the posting.

On December 12, 2013, Fajardo received an e-mail regarding a posting and immediately accessed the company's Facebook page. On the page, Fajardo saw a post with defendant's name, indicating he was the person who posted the message. Fajardo testified the post stated defendant "[c]alled Jennifer and I was trying to get your services and she started flirting with me. I don't want that kind of trick by a cunt, c-u-n-t. I'm a serious man and I'm not trying to get a hooker, I just wanted to hire you."

---

[1]All further statutory references are to the Penal Code unless otherwise specified.

On the same date, Fajardo was alerted to another post on the company's Facebook page. The posting had the same text as the previous one posted by defendant. Instead of defendant's name, however, it indicated it was posted by "Nizon F. Cush."[2]

On March 28, 2014, Fajardo got an e-mail about another Facebook post. This one was posted by "Nizon F. Cush" in Spanish. Fajardo translated it into English as stating, "Good job, but please laid [*sic*] off," and "Slut, Jennifer Fajardo." The post also included a photograph of Fajardo at a beach without a shirt showing her bare breasts.[3]

Fajardo testified the photograph of her at the beach was taken by defendant using a digital camera in 2010 or 2011 while they were still dating. Defendant and Fajardo understood at the time the photo was taken that it would "remain just between" the two of them, and "that it wasn't going anywhere." Defendant transferred this photograph and others he had taken of Fajardo onto his computer, and the two of them had "promised to erase them when everything was over, and that they would never be published anywhere."

Fajardo testified she felt embarrassed and afraid upon seeing the post that included the photograph showing her breasts, because she believed nothing between her and defendant could now be hidden. Although her employer's project manager and not her boss had learned of the post, she was concerned about losing her job. Fajardo testified "It's been so hard for me going to work thinking that my boss is going to tell something and I'm afraid to lose my job as well." Fajardo further testified the post "made me feel bad, to the point that I even told my mother that all I wanted to do was go get in the car and go kill myself." Although she believed she needed psychological help due to the posting, she had not seen a professional because she did not have money to pay for a doctor.

---

[2]Fajardo knew defendant sometimes used the aliases "Nizon F. Cush" and "Kush" because they referenced the fact he had a prescription to smoke marijuana. Fajardo had also seen a Facebook profile of "Nizon F. Cush" which had a picture of defendant and his daughters on it.

[3]Fajardo further testified that on March 28, 2014, she saw an additional post on the company's Facebook page from "Nizon F. Kush" stating, "Fire this thief and dirty slut." This post included a photograph of Fajardo wearing a shirt.

Fajardo deleted the posts immediately after she saw them. But, she first took photographs of the computer screen each time she viewed the posts.

III.  *DISCUSSION*

A.    Constitutionality of Section 647, Subdivision (j)(4)

Defendant argues section 647, subdivision (j)(4), is unconstitutional because it is vague, thereby violating due process of law under the United States and California Constitutions (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 7), and overbroad, violating the right to free speech (U.S. Const., 1st Amend.).  "We review the constitutionality of a statute de novo. [Citation.]"  (*In re Brian J.* (2007) 150 Cal.App.4th 97, 124.)

*(1)  Due process*

Due process of law is based on the "concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders.  [Citation.]  These protections . . . are often referred to collectively as the 'fair warning' rule.  [Citations.]"  (*People v. Castenada* (2000) 23 Cal.4th 743, 751.)  "The vagueness doctrine "'bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.'"  [Citations.]' [Citation.]  A vague law 'not only fails to provide adequate notice to those who must observe its strictures, but also "impermissibly delegates basic policy matters to [law enforcement], judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."  [Citation.]'  [Citation.]  In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that 'abstract legal commands must be applied in a specific context,' and that, although not admitting of 'mathematical certainty,' the language used must have "'*reasonable* specificity.'" [Citation.]"  (*In re Sheena K.* (2007) 40 Cal.4th 875, 890, original italics.)

Defendant was convicted of committing a 2014 violation of section 647, subdivision (j)(4).  At that time the statute provided, in relevant part, that every person who committed any of the following acts was guilty of a misdemeanor: "(A) Any person who photographs or records by any means the image of the intimate body part or parts of another identifiable person, under circumstances where the parties agree or understand that the image shall remain private, and the person subsequently distributes the image taken, with the intent to cause serious

emotional distress, and the depicted person suffers serious emotional distress.  [¶]  (B) As used in this paragraph, intimate body part means any portion of the genitals, and in the case of a female, also includes any portion of the breasts below the top of the areola, that is either uncovered or visible through less than fully opaque clothing."  (§ 647, subd. (j)(4).)[4]

Defendant argues the statute is vague because it "fails to specify the nature of the agreement and understand[ing] the parties must reach before a person can legally 'distribute' the image," and "fails to notify a person what constitutes 'private.'"  The terms of the statute, however, are not such that a person of common intelligence would be required to guess at their meaning.  Similarly, those of common intelligence would not differ as to its application, and its terms do not lend themselves to arbitrary and discriminatory application.  The images subject to the statute are those of intimate body parts, including genitals and female breasts.  The agreement or understanding referred to in the statute simply reflects that it is reasonable for individuals to concur with one another that such images not be distributed to other persons. Pictures of these body parts are commonly understood to be private, meaning not to be seen by the general public absent consent given by the party being depicted.  Read in the specific context of the statute, the terms used in section 647, subdivision (j)(4) provided a person with reasonable specificity, thereby comporting with due process.

*(2)  First Amendment*

"The First Amendment to the United States Constitution states: 'Congress shall make no law . . . abridging the freedom of speech . . .'" and applies to the states under the due process clause of the Fourteenth Amendment (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 133-134).  Under the overbreadth doctrine, "litigants may challenge a statute not because their own rights of free expression are violated, but because the very existence of an

---

[4]The current version of section 647, subdivision (j)(4)(A), is similar to the one in effect in 2014, providing it is a misdemeanor when a person "intentionally distributes the image of the intimate body part or parts of another identifiable person, or an image of the person depicted engaged in an act of sexual intercourse, sodomy, oral copulation, sexual penetration, or an image of masturbation by the person depicted or in which the person depicted participates, under circumstances in which the persons agree or understand that the image shall remain private, the person distributing the image knows or should know that distribution of the image will cause serious emotional distress, and the person depicted suffers that distress."

overbroad statute may cause others not before the court to refrain from constitutionally protected expression. [Citations.]" (*In re M.S.* (1995) 10 Cal.4th 698, 709.) To avoid being unconstitutionally overbroad, "statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. [Citations.]" (*Broadrick v. Oklahoma* (1973) 413 U.S. 601, 611-612.) The overbreadth doctrine "is, manifestly, strong medicine" which has been used "sparingly and only as a last resort." (*Id.* at p. 613.)

Defendant argues the statute is overbroad because it "arbitrarily forecloses to any person the right to distribute legally taken photographs of certain images," and it applies to "almost any photographs of 'intimate body parts.'" Assuming, without deciding, a person has a free speech right to distribute photographs and other captured images, section 647, subdivision (j)(4), was not overbroad because it was narrowly drawn and it protected a compelling public interest.

As it read in 2014, section 647, subdivision (j)(4) only barred a person who photographed or recorded the image from distributing it, when such a person had the intent to cause serious emotional distress. The requirement that a person *intend* to cause distress served to narrow the law (see *Stark v. Superior Court* (2011) 52 Cal.4th 368, 391), rendering it inapplicable, for example, if the person acted under a mistake of fact or by accident (see § 26, subds. (3), (5)).

Furthermore, it is not just *any* images that are subject to the statute, but only those which were taken under circumstances where the parties agreed or understood the images were to remain private. "The government has an important interest in protecting the substantial privacy interests of individuals from being invaded in an intolerable manner. [Citation.]" (*People v. Astalis* (2014) 226 Cal.App.4th Supp. 1, 8.) It is evident that barring persons from intentionally causing others serious emotional distress through the distribution of photos of their intimate body parts is a compelling need of society. The statute was not overbroad because the limitations specified therein greatly narrowed its applicability, diminishing the possibility that it

6

could lead persons to refrain from constitutionally protected expression, and it constituted "a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. [Citations.]" (*Broadrick v. Oklahoma, supra,* 413 U.S. at p. 611-612.)

B.      Jury Instructions

Defendant argues the court erred by failing to instruct the jury that a violation of section 647, subdivision (j)(4) must be "knowing"; failing to define "distributes" and "serious emotional distress"; failing to provide a unanimity instruction; and failing to instruct the jury pursuant to CALCRIM No. 358 that it should consider with caution any statements made by defendant tending to show his guilt. "We review de novo whether jury instructions state the law correctly. [Citation.]" (*People v. Jackson* (2010) 190 Cal.App.4th 918, 923.)

*(1)  Elements of section 647, subdivision (j)(4)*

The court instructed the jury regarding the elements of section 647, subdivision (j)(4), as it read in 2014. This included that the People were required to prove defendant photographed an intimate body part of Fajardo under circumstances where he and Fajardo understood the image would remain private, and he "subsequently distributed the image with the intent to cause emotional distress." The court further instructed the jury that the violation required "a specific intent," and that to find a person guilty of the crime, "that person must not only intentionally commit the prohibited act, but must do so with the specific intent." As indicated by the instruction on the elements of section 647, subdivision (j)(4), the jury was required to determine if defendant had the specific intent to cause emotional distress.

As noted by defendant on appeal, the court did not instruct the jury that in order to be found guilty, the People had to prove defendant knew or should have known distribution of Fajardo's image would cause serious emotional distress. The court was not required, however, to instruct the jury regarding knowledge, because it complied with the constitutional requirement of including a scienter element (see *Elonis v. United States* (2015) 575 U.S. ___,

7

___, 135 S.Ct. 2001, 2003), by instructing the crime required specific intent, and the statute as it read in 2014 did not explicitly specify such knowledge was needed.[5]

Contrary to defendant's argument, the court was not required to define for the jury the terms "distributes" and "serious emotional distress" found in section 647, subdivision (j)(4). This is because there is no indication in the statute that the terms at issue were used in a "technical sense peculiar to the law" (*People v. Jennings* (2010) 50 Cal.4th 616, 670), and since "the terms defendant[] challenge[s] are words in common use and of common knowledge . . . their definition [was] not necessary. [Citation.]" (*People v. Hardy* (1992) 2 Cal.4th 86, 153).

"Distribute" is commonly defined as "to give or deliver (something) to people." (<http://www.merriam-webster.com/dictionary/distribute>;[6] see *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122 ["When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word. [Citations.]"].) The Oxford Dictionary defines "serious" as "[s]ignificant or worrying because of possible danger or risk; not slight or negligible." (<http://www.oxforddictionaries.com/definition/english/serious>.) It defines "emotional" as relating to "strong feeling deriving from one's circumstances, mood, or relationships with others"; (http://www.oxforddictionaries.com/us/definition/english/emotion) and "distress" as "[e]xtreme anxiety, sorrow, or pain." (http://www.oxforddictionaries.com/ definition/english/distress>.) These are common terms and words which "can readily be understood by jurors" (*People v. Manibusan* (2013) 58 Cal.4th 40, 46) and therefore did not need to be defined in the court's instructions.

*(2) Unanimity* [Not Certified for Publication]

Defendant argues a unanimity instruction was required because the prosecution introduced evidence of four posts—two on December 13, 2013 and two on March 28, 2014—to

---

[5]In contrast, the present version of section 647, subdivision (j)(4)(A), *does* specifically contain a knowledge component, providing it is required "the person distributing the image *knows or should know* that distribution of the image will cause serious emotional distress . . . ." (Italics added.)

[6]All subsequent internet dictionary definitions were accessed on March 4, 2016.

prove three counts: two charges of violating a restraining order and one violation of unlawfully distributing a private image. "'[W]hen the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]' [Citation.] Where no election is made, the court has a duty to instruct sua sponte on the unanimity requirement. [Citation.]" (*People v. Curry* (2007) 158 Cal.App.4th 766, 783.) The People argue on appeal that no unanimity instruction was required because the prosecutor, in both his opening statement and closing argument, adequately "informed [the jurors] of their duty to render a unanimous decision as to a particular unlawful act." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1539.)[7]

We do not decide whether the prosecutor communicated to the jury a sufficiently clear election, because, even if a unanimity instruction was required, reversal is unwarranted. In this instance, the failure to provide such an instruction was not prejudicial. "The failure to provide a unanimity instruction is subject to the *Chapman* [*v. California* (1967) 386 U.S. 18 (*Chapman*)] harmless error analysis on appeal. [Fn. omitted.] [Citation.]" (*People v. Curry*, *supra*, 158 Cal.App.4th at p. 783.) "Under *Chapman*, . . . '[w]here the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that [the] defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless.' [Citation.] For example, where the defendant offered the same defense to all criminal acts, and 'the jury's verdict implies that it did not believe the only defense offered,' failure to give a unanimity instruction is harmless error. [Citation.]" (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 577.)

The defense in this case did not depend in any way on which of the four posts constituted violations of the charged counts. Defense counsel argued in both her opening

---

[7]The prosecutor told the jury during opening statement and closing argument the first restraining order violation occurred on December 12, 2013, when defendant, using the alias "Nizon F. Cush" posted the comment that Fajardo started flirting with him, and the second violation occurred on March 28, 2014, when defendant posted the company should "[f]ire this thief and dirty slut." The prosecutor also told the jury the unlawful distribution violation occurred when defendant, on March 28, 2014, posted the photograph of defendant without a shirt.

statement and closing argument that defendant should be found not guilty of the restraining order and distribution of a private image charges because the prosecution failed to prove he was the one who made the posts, and that, additionally, the jury should acquit him of the unlawful distribution charge because Fajardo did not suffer serious emotional distress.[8]  Since defendant asserted the same defense in response to each count—that he was not the one that made the posts—by finding him guilty, the jurors' verdict implies they rejected his defense. Accordingly, we conclude any error in failing to instruct on unanimity was harmless beyond a reasonable doubt.

    *(3)  CALCRIM No. 358*  [Not Certified for Publication]

    Defendant points out the court did not provide the jury with CALCRIM No. 358.[9] Defendant did not request this instruction at trial, and subsequent to the guilty verdicts in the case, the California Supreme Court held a court no longer has a sua sponte duty to provide it. (*People v. Diaz* (2015) 60 Cal.4th 1176, 1180.)  The high court, however, determined it did not need to "decide whether the new rule [it announced]—eliminating the court's sua sponte duty to give the cautionary instruction on defendant's extrajudicial statements—applie[d] retroactively because, in any event, the omission of the cautionary instruction was harmless." (*Id.* at p. 1195.)  We adopt the same approach.  Assuming, without deciding, the high court's new rule was not retroactive and the trial court erred in failing to sua sponte provide the jury with CALCRIM No. 358, the error was nevertheless harmless because it was not "reasonably

---

[8]Defendant maintained someone else had a motive to cause Fajardo emotional distress. Specifically, he pointed to Fajardo's testimony that, while she and defendant were still dating, defendant's ex-girlfriend "Maria" broke one of the windows to Fajardo's home, banged on the door trying to get in, and vandalized Fajardo's car with a key.

[9]CALCRIM No. 358 provides, in relevant part, "You have heard evidence that the defendant made . . . oral or written statement[s] (before the trial/while the court was not in session).  You must decide whether the defendant made any (such/of these) statement[s], in whole or in part.  If you decide that the defendant made such [a] statement[s], consider the statement[s], along with all the other evidence, in reaching your verdict.  It is up to you to decide how much importance to give to the statement[s].  [¶]  [Consider with caution any statement made by (the/a) defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded.]"

probable the jury would have reached a result more favorable to defendant had the instruction been given. [Citation.]" (*People v. Diaz, supra*, 60 Cal.4th at p. 1195.)[10]

"'Since the cautionary instruction is intended to help the jury to determine whether the statement attributed to the defendant was in fact made, courts examining the prejudice in failing to give the instruction examine the record to see if there was any conflict in the evidence about the exact words used, their meaning, or whether the [statements] were repeated accurately.' [Citation.]" (*People v. Diaz, supra*, 60 Cal.4th at p. 1195.) In the present case, there was no such conflict. At trial, defense counsel did not dispute the accuracy of the posts on Fajardo's employer's Facebook page, what they meant, whether Fajardo repeated them accurately, or whether defendant made any statements to Fajardo in which he agreed to keep the subject image private. Fajardo took pictures of the screenshots of the posts, and copies of the pictures were admitted into evidence. The defense did not dispute there was an agreement to keep the photograph of Fajardo private. At trial, defendant disputed whether he had made the posts, and CALCRIM No. 358 would have instructed the jury to determine "whether . . . defendant made any . . . such . . . statement[s]." However, the jury was instructed the People had the burden of proving all the elements of the crime beyond a reasonable doubt. As such, the jury knew it had to make this determination in order to find defendant guilty, even without being separately instructed on the issue of whether defendant made the posts.

C. Sufficiency of the Evidence

Defendant argues insufficient evidence was presented that defendant violated section 647, subdivision (j)(4), because there was a lack of proof he distributed Fajardo's photograph and lack of proof she suffered any serious emotional distress. Defendant further argues there was insufficient evidence he violated the restraining order, because the People did not prove the order was issued under Family Code section 6218.

*(1) The term "distributes"*

Defendant argues that the term "distributes" in section 647, subdivision (j)(4)(A), should be defined to exclude posting an image on Facebook. He urges we adopt a dictionary definition

___

[10]In light of this determination, we do not decide if defendant's trial counsel was ineffective in failing to request that the instruction be given.

11

of the word defining it to mean "[t]o deliver"  (Black's Law Dict. (9th ed. 2009) p. 487); or use the meaning contained in the federal statute barring distribution of child pornography, which requires transfer of the pornography to another person (18 U.S.C. § 2252); or use the meaning contained in state statutes barring distribution of child pornography, which require a transfer of possession (see, e.g., § 313.1).  Defendant argues posting an image on a social media site such as Facebook does not effectuate delivery of the image or transfer to a specific person.  As discussed above, however, there is no indication in section 647, subdivision (j)(4), that the term "distributes" was intended to have a technical legal meaning, or to mean anything other than its commonly used and known definition of "to give or deliver (something) to people." (<http://www.merriam-webster.com/dictionary/distribute>.)

Moreover, to the extent there is any ambiguity in the meaning of the term "distributes," we may consult extrinsic evidence of intent, including the legislative history of the statute. (*People v. Yartz* (2005) 37 Cal.4th 529, 538.)  Legislative analyses of the Senate Bill that enacted section 647, subdivision (j)(4), are replete with indications that posting images on public websites was *precisely* one of the evils the statute sought to remedy.

One analysis stated, ""Cyber revenge" is an invasive and increasingly common crime, which often involves the *online posting* of private or intimate photos of another person without the person's consent. . . .'" (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 255 (2013-2014 Reg. Sess.) as amended August 21, 2013, p. 2, italics added.)  Another stated, "According to the author: 'Cyber revenge' or 'distribution of a private image' refers to the *posting* of illicit pictures of another person without his/her consent, often as retaliation following a bitter breakup between partners."  (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 255 (2013-2014 Reg. Sess.) as amended September 5, 2013, p. 5, italics added.)  Yet another referred to an instance where naked photographs of an ex-spouse were posted without her authorization on a personal ads section of a website.  (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 255 (2013-2014 Reg. Sess.) as amended August 21, 2013, pp. 4-5.)  Completely absent from the legislative history is any indication that the statute

should be limited to situations where a person delivered or transferred an image to another specific person.

"'To determine whether sufficient evidence supports a jury verdict, a reviewing court reviews the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Johnson* (2015) 60 Cal.4th 966, 988.) The evidence Fajardo's photograph was posted on a public Facebook page using an alias Fajardo knew was used by defendant constituted substantial evidence supporting defendant's distribution of the photograph.

*(2)  The term "serious emotional distress"*

Defendant argues the term "serious emotional distress" should also be given a specialized legal meaning, akin to the definition of "severe emotional distress" for the tort of intentional infliction of emotional distress. (See *Coleman v. Republic Indemnity Ins. Co.* (2005) 132 Cal.App.4th 403, 416 [defining severe emotional distress as "outrageous" conduct which is "extreme" and going "'. . . ". . . beyond all possible bonds of decency [so as to be] regarded as atrocious, and utterly intolerable in a civilized community."'. . ."].) Defendant maintains there was insufficient evidence to establish Fajardo suffered such distress.

However, as discussed *ante*, there is no indication a specialized legal meaning was intended to be used instead of the commonly understood meaning of the term, such as a "significant" or "strong feeling" of "[e]xtreme anxiety, sorrow, or pain." (See http://www.oxforddictionaries.com/definition/english/serious, /emotion, /distress>.)

Yet, even if defendant's proposed definition applied, the distress testified to by Fajardo constituted substantial evidence supporting this element of the crime. An image showing Fajardo's bare breasts—which she believed would never be seen by anyone other than defendant—was posted on a Facebook page, and Fajardo now felt nothing between her and defendant could be hidden from the public. Fajardo was embarrassed, she worried about losing her job, believed she needed psychological help but lacked the money for treatment, and she felt so bad that she told her mother she wanted to "get in the car and go kill [herself]." Whether

13

a common or specialized definition was used, this was all that was required to satisfy the element in question.

*(3) Protective order* [Not Certified for Publication]

Section 273.6, subdivision (a), makes it a misdemeanor for a defendant to violate a protective order defined in Family Code section 6218. Family Code section 6218 provides a "protective order" includes restraining orders enjoining specific acts of abuse under Family Code section 6320, excluding a person from a dwelling under Family Code section 6321, or enjoining other specified behavior under Family Code section 6322. A copy of the order obtained by Fajardo was admitted into evidence as an exhibit and, along with all the exhibits admitted at trial, was transmitted to this court. (Cal. Rules of Court, rule 8.870.)

The order was issued on a Judicial Council DV-130 form, one of "the standard mandatory forms for [domestic violence restraining order] requests." (*Faton v. Ahmedo* (2015) 236 Cal.App.4th 1160, 1168.) The order indicated it was a "Mandatory Form" to be used under "Family Code § 6200 et seq.," which includes restraining orders issued to enjoin persons under Family Code sections 6320 through 6322. The form stated defendant was Fajardo's ex-boyfriend, and Family Code section 6301, subdivision (a), provided a person in such a relationship could be enjoined. (See Fam. Code, § 6211, subd. (c).) Further, the order required defendant to, inter alia, not "harass, attack, strike, threaten, [or] assault" Fajardo, as authorized by Family Code section 6320, and ordered him to stay away from Fajardo's home, as authorized by Family Code section 6321. Substantial evidence was presented that the restraining order was issued by the court under Family Code section 6218.

D.     Prosecutorial Misconduct [Not Certified for Publication]

Defendant contends the prosecutor committed misconduct by misstating the burden of proof during closing argument. Defendant forfeited this issue on appeal because he did not object to the prosecutor's argument in the trial court and ask the court to admonish the jury to disregard the argument. (*People v. Charles* (2015) 61 Cal.4th 308, 327.)

Defendant argues his trial counsel was ineffective for failing to object and request a curative admonition. "To prevail on a claim of ineffective assistance of counsel, [a] defendant

'must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice. [Citation.] . . ." . . ." (*People v. Hart* (1999) 20 Cal.4th 546, 623.) Defendant's ineffective assistance of counsel argument fails because the prosecutor did not commit misconduct, and hence "[c]ounsel is not ineffective for failing to make frivolous or futile motions. [Citation.]" (*People v. Thompson* (2010) 49 Cal.4th 79, 122.)

Defendant argues misconduct was committed when the prosecutor was arguing in rebuttal concerning the defense theory that it was a person other than defendant that placed the posts on Facebook. Defendant references the prosecutor's argument to the jurors that, if they thought the defense theory was "unreasonable and you think Ms. Fajardo's testimony is reasonable, there is no reasonable doubt in this case, period. That's common sense."

A prosecutor's argument that absolves the People of its burden to overcome reasonable doubt constitutes misconduct. (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667.) Here, however, the prosecutor's argument did not lessen the burden. No evidence from Facebook or any e-mail provider was provided linking defendant to the posts. Rather, the People's evidence that it was defendant who made the posts consisted exclusively of Fajardo's testimony. The prosecutor's argument did not lessen the burden of proof by telling the jurors that, if they found the defense theory that "Maria" or someone else made the posts to be unreasonable, and if they believed Fajardo, then the identity of the perpetrator was proven beyond a reasonable doubt.

Defendant also argues the prosecutor lessened the burden of proof by telling the jury during rebuttal that "[p]robable doubt may not be that important." It is unclear from the prosecutor's full statement, however, what this comment meant. Immediately before the prosecutor made the statement, he argued as follows: "Reasonable doubt is a high standard. It is a bedrock of our criminal justice system. We do not shy away from it, but the People have met it in this case." The prosecutor also told the jury proof beyond a reasonable doubt did not require "absolute certainty," did not require the case to be proven beyond an "imaginary doubt," and the defense's theory that it was "Maria" who posted on Facebook constituted only imaginary doubt. The prosecutor then stated: "It's not possible doubt. It's reasonable doubt. Probable doubt may not be that important."

15

The prosecutor did not lessen the burden by telling the jury proof beyond a reasonable doubt was a high standard, or that it did not require proof beyond all doubt. CALCRIM No. 220 was read to the jury and provided, in relevant part, as follows: "The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." At most, the prosecutor's statement was ambiguous, and defendant has not established the prosecutor thereby lessened the burden or proof.[11]

[The balance of the opinion is to be published.]

IV. *DISPOSITION*

The judgment of conviction is affirmed.


**CERTIFIED FOR PARTIAL PUBLICATION**


_____
RICCIARDULLI, Acting P. J.

We concur:

_____
B. JOHNSON, J.


_____
DYMANT, J.*


*Retired judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.

---

[11]Lastly, defendant contends the cumulative effect of the errors in his case denied him a fair trial. With regard to most of defendant's contentions, we have already determined there was no error. With respect to the two instances where we assumed error occurred—failing to instruct on unanimity and on CALCRIM No. 358—we determined no prejudice resulted. Defendant has failed to show that, when considered together, the two assumed errors deprived him of a fair trial.